IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MALIBU MEDIA, LLC,

    Plaintiff,

v.

JOHN DOE Subscriber Assigned IP Address 76.126.99.126,

    Defendant.
                                 /

And All Related Cross-Actions.
                                 /

No. C 15-04441 WHA

**ORDER RE DEFENDANT'S MOTION TO QUASH SUBPOENAS**

## INTRODUCTION

In this copyright infringement action involving alleged piracy of pornographic videos on the Internet, plaintiff served five third-party subpoenas on companies that operate online public forums allegedly used by defendant. Defendant moves to quash the subpoenas. For the reasons stated below, defendant's motion is **DENIED**.

## STATEMENT

The facts of this case have been set forth in prior orders and need not be set forth in full here (Dkt. Nos. 44, 34). Briefly, plaintiff Malibu Media, LLC, a maker and distributor of pornographic videos accuses defendant John Doe Subscriber Assigned IP address 76.126.99.126 of using his Internet connection to download, copy, and distribute twenty-three of its copyrighted works using the BitTorrent file-sharing protocol. (Malibu Media has obtained defendant's identity, but his identifying information is subject to a protective order and need not be used in this order.)

Throughout discovery, defendant, who is represented by Attorneys J. Curtis Edmondson and Robert Steven Robinson denied nearly every material allegation in this case. For example, he responded to one interrogatory by stating, "No. I have not knowingly downloaded a song, movie, game software program or computer file using BitTorrent or any Peer-to-peer file-sharing program" (Pl.'s Exh. A, Response to Interrogatory No. 13). In response to another interrogatory asking if he has "ever searched for any torrent file on the Internet," he responded, "No" (*id.*, Response to Interrogatory No. 17). In response to another interrogatory asking if he had every watched adult content such as pornography, he averred "I watched adult content twice in high school" (*id.*, Response to Interrogatory No. 18). Finally, defendant generally described his experience with computers as basic and introductory (*id.*, Response to Interrogatory No. 3).[1]

Malibu Media's forensic computer analyst, Patrick Paige, examined three hard drive images produced by our defendant. In that investigation, he allegedly found evidence of other hard drives that have not been turned over (Paige Rpt. ¶ 42). In his examination, Paige discovered that the user name ▮▮▮ and the email address ▮▮▮▮▮▮ were both saved in auto-fill settings on one of defendant's hard drives, and that the user name ▮▮▮ had been used to log into Overclock.net, a website operated by Wikia Inc. Paige also found that defendant used that hard drive to access an email account with the address ▮▮▮▮ (Paige Rpt. ¶¶ 31–32).

Malibu Media also contends that the user identified as ▮▮▮ posted about purchases he made, his job, and his residence, all of which comport with evidence already produced in discovery. But Malibu Media fails to produce the corroborating evidence at all, much less

---

[1] This order notes that Malibu Media simply appended its exhibits to its opposition brief, without providing a sworn record averring that the exhibits were indeed the responses served by our defendant. Moreover, the responses are signed simply by "John Doe," not with our defendant's real name. Nevertheless, defendant does not dispute the authenticity of these responses. This order accepts, for the sake of this motion, that the interrogatory responses are indeed those served by our defendant, but reserves on whether they will be accepted as such at summary judgment or at trial and on whether they are properly sworn to by our defendant.

Counsel for Malibu Media must take greater care to provide a *sworn* record and to follow the procedural rules of this Court.

2

1  supported by a sworn record. Accordingly, this order does not consider that contention as a
2  basis for the relevance of information relating to ▓▓▓.

3  Malibu Media served subpoenas on four companies that host websites containing public
4  forums with posts appearing to have originated with our defendant's accounts. Specifically,
5  it served subpoenas on (i) Wikia Inc., which operates the website Overclock.net,
6  (ii) VerticalScope USA Inc., which operates the website SocialAnxietySupport.com, (iii)
7  Piriform, Inc., which operates the website Piriform.com, and (iv) Interactive Life Forms, which
8  operates the website Fleshlight.com. The subpoenas seek records of all IP addresses associated
9  with the username ▓▓▓, records of the personal identifying information for that username, all
10 postings on the respective website, records of the total number of posts by ▓▓▓ as of the date
11 Malibu Media accessed the respective website, and records of any posts deleted since that date
12 (Edmondson Decl., Exhs. 2–5). Here are several examples of posts made by ▓▓▓ on the
13 above-named websites:[2]

14 In June 2012, ▓▓▓ posted about his "daily" frequency of visiting pornographic
15 websites in a forum on Overclock.net (Pl.'s Opp., Exh. B at 2) (errors in original):



18 In May 2012, ▓▓▓ posted about his usage of torrents (the files used to initiate a download on
19 the BitTorrent protocol) (*id.* at 3) (ellipsis and errors in original):



24 In a post in July 2012 on SocialAnxietySupport.com, ▓▓▓ identified ▓▓▓▓▓
25 ▓▓▓▓▓ and ▓▓▓▓▓ as three things he was addicted to (*id.*, Exh. C at 26).

---

[2] Although Malibu Media offered no sworn declaration averring that the websites appended to its opposition were in fact the websites represented, the Court independently verified that the websites appended to Malibu Media's opposition indeed contained the posted contents. Accordingly, since the contents of those sites can accurately and readily be determined from the websites themselves, judicial notice is taken of the contents of the websites as they appeared on December 12, 2016, which did not differ materially from the appended screenshots. FRE 201(b)(2).

1    In a post on Fleshlight.com, ▓▓▓▓ responded to the question ▓▓▓▓▓▓▓▓
2    as follows, in pertinent part (*id.*, Exh. D at 2) (errors in original):

3    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5    Malibu Media identifies numerous other posts by the user ▓▓▓▓ on the forgoing
6    websites and others, not set forth in detail in this order, many of which refer to masturbation,
7    pornography, voyeurism, downloading television shows and movies, torrents, building his own
8    computer, and ownership of computers with specifications different from those produced in
9    discovery.

10   Malibu Media also served a fifth subpoena on Microsoft Corporation, which operated
11   the email server, live.com, which Paige attributed to our defendant. In addition to seeking the
12   same information sought from the online forums, Malibu Media also sought records of *devices*
13   associated with the ▓▓▓▓▓▓▓▓ account and the specifications thereof, the history of
14   searches with specific terms relating to torrents and Malibu Media's website on Microsoft's
15   search engine by the user of that account, records of deletion by that account of search history
16   between November 2015 and now, and billing information (Edmondson Decl., Exh. 1).

17   Defendant moves to quash the subpoenas. This order follows full briefing and oral
18   argument.

## ANALYSIS

20   Rule 45(d)(3)(A) provides several bases for quashing a subpoena. Notably for our
21   purposes, a subpoena must be quashed or modified if it "subjects a person to undue burden."
22   Additionally, any discovery subpoena remains subject to the relevance requirements of Rule 26.

24   Here, compliance with these subpoenas would not cause *plaintiff* undue burden, and
25   plaintiff offers no evidence that this would cause any of the recipients undue burden. (Indeed,
26   the fact that no recipient of a subpoena has moved to quash implies that no undue burden would
27   be suffered.) Thus, this order only addresses the question of relevance.

1    Defendant argues that the subpoenaed information is irrelevant, because he never posted
2 about Malibu Media's content. Furthermore, he argues that any request should be tailored to
3 the period of infringement, rather than open-ended. Defendant ignores the fact that Malibu
4 Media has a right to develop circumstantial evidence as well as impeachment evidence, which
5 may not necessarily pertain to Malibu Media's videos. Indeed, as the examples set forth above
6 show, a user with the name ▮▮▮▮ made numerous statements that would directly contradict
7 defendant's own statements in response to interrogatories, if ▮▮▮▮ was our defendant.

8    True, many of the most salient statements came years before the period of infringement,
9 and some might fall in the category of inadmissible habit or character evidence. But
10 defendant's earlier posts may impeach his often absolute and unequivocal denials. Moreover,
11 the subpoenaed information may lead to information about additional hard drives that defendant
12 failed to produce. Defendant's relevance arguments are simply unavailing.

13    Nor is defendant's argument that he himself can provide the subpoenaed information
14 persuasive. Given defendant's outright denials, these subpoenas may be the only means for
15 Malibu Media to authenticate the posts by ▮▮▮▮. (In fact, there is no indication that our
16 defendant admits to using the ▮▮▮▮ account.) Moreover, to the extent deleted posts can be
17 recovered at all, there is little reason to believe that our defendant would actually have
18 maintained records of those posts.

19    Defendant vaguely refers to the "Anonymous Speech Doctrine" but cites no authority
20 relating to anonymous speech that would prohibit the instant subpoena on that basis. Counsel
21 for Malibu Media state that they have "not been able to locate any caselaw or authority
22 explaining or citing to the Anonymous Speech Doctrine, nor has Defendant provided any in
23 support" (Pl.'s Opp. at 13). The "Anonymous Speech Doctrine" appears to be academic
24 shorthand for a collection of decisions that balanced the private interest of anonymity against
25 the public interest in disclosure, though no court has referred to such a "doctrine." Defendant
26 abandons this argument in his reply. This order will not guess at the substance of defendant's
27 unsupported argument.
28

Defendant also argues that the subpoena on Microsoft violates the Stored Communications Act because "Microsoft is statutorily prohibited from revealing email communications" (Def.'s Mtn. at 6). But Malibu Media does not seek email communications. Defendant also abandons this brief argument in his reply. Additionally, to the extent the subpoenas are directed at any communications covered by the Stored Communications Act (beyond the "emails" mistakenly identified by defendant), the recipients of the subpoenas remain free to raise this concern.

Defendant also argues that Malibu Media was required to affirmatively seek leave to serve the third-party subpoenas at issue herein. Specifically, he contends that the order granting leave to serve a third-party subpoena on defendant's Internet service provider required Malibu Media to seek leave to serve *any* third-party subpoenas on any provider of any service. He cites the following paragraph from the order (Dkt. No. 12):

> In its proposed order (but not in its motion) Malibu Media also sought leave to serve subpoenas on "any service provider that is identified in response to a subpoena as a provider of Internet services to Defendant." Malibu Media mus seek leave to serve subpoenas on any other service provider besides Comcast in this matter.

Plainly, defendant's interpretation of that order is incorrect. Malibu Media sought leave to subpoena on Comcast because it was required to do so by law. The order made clear that, despite the language in Malibu Media's proposed order, it did not have blanket authority to serve *more* Internet service providers for whom it had not yet offered any basis for serving a subpoena. The order did *not* impose a requirement to seek leave to serve beyond that imposed by the law. Defendant's argument to the contrary is rejected.

Nevertheless, Malibu Media appears to seek to embark on a fishing expedition with regard to Microsoft's records of defendant's online postings using his live.com email address, inasmuch as it has failed to identify even a single probative item it expects to find on such forums, to the extent any such forums exist. Similarly, Malibu Media has offered no indication whatsoever of the importance of the Piriform.com subpoena. (Indeed, except to note that it has sent a subpoena to Piriform, Malibu Media does not mention that company at all.)

Rule 26 now requires discovery to be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Malibu Media's failure to even address the importance of certain aspects of its proposed discovery is fatal as to those issues. Malibu Media's request for "online postings" from Microsoft and its entire request from Piriform.com are simply out of proportion with the needs of this case (on the present record). Therefore, the subpoenas must be quashed to that extent only.

**CONCLUSION**

For the reasons stated above, defendant's motion to quash is **DENIED** as to the subpoenas served on Wikia Inc. (Overclock.net), VerticalScope USA Inc. (SocialAnxietySupport.com), and Interactive Life Forms (Fleshlight.com), **GRANTED IN PART AND DENIED IN PART** as to the subpoena served on Microsoft Corporation (Live.com), and **GRANTED** as to Piriform, Inc. (Piriform.com).

In a separate filing after filing his reply, defendant raised several evidentiary objections. Notwithstanding the fact that Civil Local Rule 7-3(c) requires "[a]ny evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum," defendant's evidentiary objections are of no moment here. To the extent there is any merit to the objections, this order assumes that Malibu Media will be able to offer the cited facts in an admissible form on summary judgment or at trial. Moreover, Malibu Media need not rely on admissible evidence to support its argument that the subpoenaed materials are discoverable. Accordingly, defendant's objections are **OVERRULED**.

This order will be temporarily filed under seal, visible only to the parties. By **DECEMBER 23 AT NOON**, any party wishing to redact portions of this order shall submit a motion supported by sworn statements explaining good cause for redacting any portion of the order. The motion shall include a proposed redacted version and may not rely on the protective order already in place.

**IT IS SO ORDERED.**

Dated:   December 16, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE