1  Anthony Lupu, Esq. (SBN:226168)
   Pillar Law Group APLC
2  150 S. Rodeo Drive, Suite 260
   Beverly Hills, CA 90212
3  Tel.:  310-999-0000
   Fax:  888-667-5482
4  Anthony@Pillar.law
   *Attorneys for Plaintiff*

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                           **SAN FRANCISCO**

11  MALIBU MEDIA, LLC,                    Case Number: 3:15-cv-4441-WHA

12         Plaintiff,                     **PLAINTIFF'S MOTION FOR**
                                          **TERMINATING SANCTIONS**
13  vs.

14  JOHN DOE subscriber assigned IP address
    76.126.99.126,

15
           Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28
                                    i

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................. 1

II.   PERIOD OF INFRINGEMENT, AND DATE DEFENDANT WAS NOTIFIED OF SUIT ... 2

III.  HARD DRIVES PRODUCED BY DEFENDANT - DEFENDANT INSTALLED AND USED
      CCLEANER ON THREE (3) HARD DRIVES PRIOR TO PRODUCTION. ......................... 2

   A.   Plaintiff Requested Production and Identification of Defendant's Hard Drives and
        Computers Used In His Home For the Preceding Three Years; Defendant initially solely
        identified one computer device, an AMD A8-3870 and solely turned over one "Solid State
        Drive." ..................................................................................................................................... 2

   B.   Defendant produced a "Solid State Drive," but had used CCleaner on it multiple times after
        learning of the lawsuit in November 2015 and before production of the drive in April 2016.
        ................................................................................................................................................. 3

   C.   After Being Notified that Plaintiff was Aware Defendant had more Hard Drives, Defendant
        Produced an Additional Hard Drive (the "250 GB Western Digital Hard Drive"), Which
        Had a Newly Installed Operating System and CCleaner On it. ........................................... 4

   D.   After Plaintiff Served Its Expert Report, Establishing that Defendant Had Not Fully Turned
        Over His Computer Devices and Hard Drives, Defendant Produced Additional Hard drives,
        including Two (2) Hard Drives ("250 GB Samsung Evo" and "First 120GB Patriot") That
        He "Wiped" With CCleaner Days Before Imaging. ............................................................. 4

   E.   Defendant's Expert, Michael Yasumoto Will Not Rebut Any of Paige's Conclusions
        Regarding Defendant's use of CCleaner. ............................................................................. 5

IV.   HARD DRIVES AND COMPUTER DEVICES THAT DEFENDANT WHOLLY FAILED
      TO PRODUCE. ...................................................................................................................... 6

   A.   Defendant Failed to Produce at Least Two (2) Additional Hard Drives Which Defendant
        Admitted Were in Use During the Period of Infringement – the "Western Digital 1 TB Hard
        Drive" and the "Family Spare Hard Drive." ....................................................................... 6

B.  Paige Concluded in His Expert Reports That Three (3) Additional Computer Devices Were Never Turned Over, including the "i7-970" device. ........................................................ 7

C.  Defendant failed to turn over any of the hard drives that were used in his "Corsair 350D" from 2013 to 2016. ................................................................................................. 7

V.  DEFENDANT REPEATEDLY COMMITTED PERJURY IN THIS CASE. ........................ 8

A.  Defendant Committed Perjury About the Number of Computer Devices Used In His Home During the Period of Recorded Infringement. ........................................................ 8

B.  Defendant Committed Perjury About the Number of Hard Drives Used in His Home During the Preceding Three Years.  Deposition Established that Defendant Had At Least Eight (8) Hard Drives In Use from 2013 to 2015.   However, None of the Hard Drives Were Referenced in Defendant's Responses to First Set of Interrogatories, Nor Turned Over. ..... 9

C.  Defendant Committed Perjury in this case by denying his use of BitTorrent. ................... 11

D.  Defendant Committed Perjury in this Case by Falsely Representing that he Did Not View Pornography ................................................................................................... 13

E.  Defendant Committed Perjury at Deposition When He Falsely Stated that he Was Unable to Remotely Access His Home Computer From Work. ........................................ 14

F.  Defendant Committed Perjury In This Case By Falsely Representing That His Corsair 350D Computer Was Only Built in 2016 – It Was Built in 2013. ........................................ 15

VI.  DEFENDANT PRODUCED AN INACCURATE AND POSSIBLY ALTERED VERSION OF HIS EMPLOYMENT RECORDS. ................................................................ 15

VII.  LEGAL STANDARD FOR SPOLIATION SANCTIONS ................................................. 16

VIII.  DEFENDANT SHOULD BE SANCTIONED FOR SPOLIATION ................................... 17

A.  Defendant Intentionally Spoiled At Lease Four (4) of His Computer Device Hard Drives 17

1.  Defendant Had Control of and a Duty to Preserve the Hard Drives ............................. 17

2.  Defendant Had Culpable State of Mind ................................................................ 18

3.  Defendant Computer Hard Drives are Material and Relevant to this Lawsuit ............... 21

B.    Defendant Should be Sanctioned for Withholding Hard Drives and Producing Inaccurate Employment Records ................................................................... 21

C.    Defendant Should be Sanctioned for Committing Perjury.................................. 22

IX.   DEFENDANT SHOULD BE SANCTIONED UNDER RULE 26(E) AND RULE 37......... 23

X.    GIVEN THE EGREGIOUS NATURE OF DEFENDANT'S ACTIONS, JUSTICE MERITS TERMINATING SANCTIONS ............................................................................ 24

XI.   CONCLUSION ................................................................................................ 26

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 323 (1994) ........................................ 23
*Alt. Recording Corp. v. Howell* 2008 U.S. Dist. LEXIS 113242.................................... 24

4

*Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995)* ................. 24
*Arnold v. County of El Dorado*, 2012 U.S. Dist. LEXIS 112398 (E.D. Cal. Aug. 9, 2012) ............. 22

5

*Bordegaray v. Cnty. of Santa Barbara*, 2016 U.S. Dist. LEXIS 173754 (C.D. Cal. Dec. 13, 2016) 23
*BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 2015 U.S. Dist. LEXIS 8034 (W.D. Wash.

6

Jan. 23, 2015)............................................................................................................ 23
*Capitol Records, Inc. v. Alaujan*, 593 F. Supp. 2d 319, 321 (D. Mass. 2009) ........................ 21

7

*Chamberlain v. Les Schwab Tire Ctr. of Cal., Inc.*, 2012 U.S. Dist. LEXIS 171325 (E.D. Cal. Nov.
30, 2012) ................................................................................................................. 22

8

*Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) .................................... 22
*Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337–38, (9th Cir. 1985)......................... 17

9

*Keithley v. Home Store.com, Inc.*, 2008 U.S. Dist. LEXIS 61741 (N.D. Cal. Aug. 12, 2008)......... 18
*Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006)* ............................................ 24

10

*Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. Wash. 2006) ................................... 17
*Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ........................................... 21

11

*Olney v. Job.com*, No. 1:12-cv-01724-LJO-SKO, 2014 U.S. Dist. LEXIS 152140 (E.D. Cal. Oct. 24,
2014)........................................................................................................................ 18

12

*Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 111 (E.D. Pa. 2005) ........................ 21
*Realnetworks, Inc. v. DVD Copy Control Ass'n*, 264 F.R.D. 517, 523 (N.D. Cal. 2009)................ 18

13

*Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 625–28 (C.D. Cal. 2013) .............. 16, 17, 18, 21
*Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)................................................ 17

14

*Slep-Tone Entm't Corp. v. Granito*, 2014 U.S. Dist. LEXIS 2023 (D. Ariz. Jan. 7, 2014) ......... 16, 21
*UMG Recordings, Inc. v. Hummer Winblad Venture Partners*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal.

15

2006) ....................................................................................................................... 18
*United States v. Dunnigan*, 507 U.S. 87, 94 (1993).................................................... 22

16

*Veolia Transp. Servs. v. Evanson*, 2011 U.S. Dist. LEXIS 136544 (D. Ariz. Nov. 28, 2011)......... 16
*Veolia Transp. Servs. v. Evanson*, 2011 U.S. Dist. LEXIS 136544, 11 (D. Ariz. Nov. 28, 2011).... 20

17

*Watkins v. Infosys*, 2015 U.S. Dist. LEXIS 96375 (W.D. Wash. July 23, 2015) ........................ 22
*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)............................... 17

18

*Zubulake v. UBS Warburg LLC ("Zubulake IV")*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)..................
................................................................................................................. 16, 17, 18, 21

19

**Rules**

20

Fed. R. Civ. P. 37(b)(2)(C) ............................................................................. 17

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

When Defendant first received notice of the lawsuit, his first order of business was to destroy evidence.  On December 10, 2015, shortly after lawsuit notifications, Defendant installed Windows 10 over one of his computer's operating system, and began the process of deleting files, using CCleaner multiple times over the next few months.  He would follow the exact same pattern with at least three (3) additional hard drives, right up until November 2016, installing a new operating system and using CCleaner to wipe evidence from his hard drives.  Virtually all of his file destructive acts occurred after he had retained counsel in late December 2015 and a forensic computer expert in late January 2016.

Defendant's second order of business was to conceal.  Defendant stated under penalty of perjury in response to interrogatories that he had never used BitTorrent, did not watch pornography, and only had one computer device (which he did not often use).  Forum posts told a different story.  Defendant was a habitual BitTorrent user, who bragged about his brazen torrent use and pornography fixation.  Forum posts (and expert computer forensics) also established that Defendant had multiple undisclosed hard drives and computers that had never been turned over, nor identified in the litigation.  This included at least three (3) additional computer devices that were in use during the infringement period, and which to date, have never been turned over.  And Defendant admitted during deposition (after being confronted with forum posts) hat he failed to turn over at least two (2) other hard drives which Defendant conceded were in use during the period of infringement.  Defendant eventually stated that he also had at least eight (8) other hard drives in use from 2013 to 2015, but self-servingly claimed (without any corroborating support whatsoever) that he got rid of or disposed of all of the hard drives, with most of the disposals occurring in August 2015 or October 2015.

Defendant's destruction of evidence, concealment of his hard drives, and false statement in written discovery responses is not the extent of Defendant's bad acts and perjury.  Instead of coming clean during deposition, Defendant continued to commit perjury.  Defendant testified that he had a Corsair 350D, and specifically denied that it operational from 2013 to 2016.  However, forum posts belied his claim – he proudly displayed and posted pictures of the Corsair 350D in forum postings in

2013 and 2015.  Defendant testified, in no unequivocal terms, that he was unable to remotely access his home computer from his work computer.  That was also false, as again established by multiple forum posts.  Defendant claimed that he had last used CCleaner on his hard drive in August 2016, which was also false - expert forensics established that he used CCleaner on November 6, 2016, days before he turned the drives over to the expert (and which was only three weeks before deposition). Defendant's willingness to destroy evidence and to make multiple false statements shows a brazen disregard for the Courts and the judicial process, and the Court should penalize Defendant with the only appropriate sanction – a striking of his answer and an entry of default judgment.

## II.  PERIOD OF INFRINGEMENT, AND DATE DEFENDANT WAS NOTIFIED OF SUIT.

Plaintiff alleges in its operative Complaint that Defendant used the BitTorrent protocol to infringe Plaintiff's copyrighted works between February 19, 2015 and November 14, 2015.  *See Amended Complaint, attached to the Declaration of Anthony Lupu as Exhibit "A."*  Defendant admits that he had knowledge of the lawsuit in November 2015.  *See Defendant's Deposition 107:3-5, attached to the Declaration of Anthony Lupu as Exhibit "B."*

## III.  HARD DRIVES PRODUCED BY DEFENDANT - DEFENDANT INSTALLED AND USED CCLEANER ON THREE (3) HARD DRIVES PRIOR TO PRODUCTION.

A. Plaintiff Requested Production and Identification of Defendant's Hard Drives and Computers Used In His Home For the Preceding Three Years; Defendant initially solely identified one computer device, an AMD A8-3870 and solely turned over one "Solid State Drive."

On June 2, 2016, Plaintiff served Defendant with Requests for Production, and First Set of Interrogatories.  On July 5, 2016, Defendant served his responses to Request for Production and First Set of Interrogatories.  *See Defendant's Responses to First Set of Interrogatories, attached to the Declaration of Anthony Lupu as Exhibit "C"; and Defendant's Responses to Request for Production, attached to the Declaration of Anthony Lupu as Exhibit "D."*

In his response to the First Set of Interrogatories, Defendant stated under penalty of perjury that he solely used one computer device from 2013 to 2016, an AMD A8-3870 processor, which he did not use that much "except to check for updates and light internet use."  *Resp. to Interrogatories No. 4, Ex. "C."*

In response to Request for Production, on July 8, 2016, Defendant turned over an Encase image of a "Solid State Drive" to Patrick Paige, Plaintiff's expert.  *See Patrick Paige Expert Report dated October 26, 2016, ¶ 13, attached to the Declaration of Anthony Lupu as Exhibit "E."*

B. Defendant produced a "Solid State Drive," but had used CCleaner on it multiple times after learning of the lawsuit in November 2015 and before production of the drive in April 2016.

Mr. Paige determined that Defendant's Solid State Hard Drive was in use as early as February 16, 2015 and that on December 10, 2015, after lawsuit notification, Defendant had installed Windows 10, and had also deleted the "windows.old" files.  *Paige Report Oct. 26, 2016, ¶ 26, Ex. "E"*  Paige determined that CCleaner[1] was installed on December 12, 2015, run numerous times thereafter, and last run on April 3, 2016 – days before he turned it over for expert imaging on April 20, 2016.  *Paige Report Oct. 26, 2016, ¶ 28, 29, Ex "E."*

Defendant admitted at deposition that he used CCleaner on the "Solid State Drive" four times from December 2015 to April 2016.  *Defendant's Deposition 109:12-110:1, Ex "B."*

Notwithstanding Defendant's efforts, Paige was able to locate positive search hits for BitTorrent client software "tixati.exe," and "qBitTorrent 3.3.0" on the Solid State Drive, and determined that the installation software for "qBitTorrent" was once located on the Solid State Drive. Paige Report Oct. 26, 2016, ¶¶ 37-39.

---

[1]CCleaner is software used to optimize a computer by deleting files left by certain programs.  It also deletes browsing history, cookies, recycle bin, memory dumps, file fragments, log files, system caches, application data, autocomplete form history, and various other data.  *Paige Report Oct. 26, 2016, ¶ 28, Ex "E."*

However, because of the actions of Defendant, the contents of the preexisting operating system were not recoverable - Paige concluded that the installation of Windows 10 on December 10, 2015 and deletion of "windows.old" folder made it impossible to determine what was on the Solid State drive during the infringement period. *Paige Report Oct. 26, 2016, ¶ 27, 28, Ex "E."*

C. **After Being Notified that Plaintiff was Aware Defendant had more Hard Drives, Defendant Produced an Additional Hard Drive (the "250 GB Western Digital Hard Drive"), Which Had a Newly Installed Operating System and CCleaner On it.**

On September 23, 2016, in response to Plaintiff advising Defendant that more hard drives were in use during the period of infringement, Defendant produced two (2) additional hard drives, including a 250 GB Western Digital hard drive.[2]

Paige determined that Defendant had installed a new operating system, Windows 7, and CCleaner on the "250 GB Western Digital" hard drive on February 14, 2016. *Paige Report Oct. 26, 2016, ¶ 17, 35 Ex "E."* In other words, Defendant had been aware of the lawsuit for *months* by that time, but nevertheless, had still installed a new operating system, and CCleaner, on it.

D. **After Plaintiff Served Its Expert Report, Establishing that Defendant Had Not Fully Turned Over His Computer Devices and Hard Drives, Defendant Produced Additional Hard drives, including Two (2) Hard Drives ("250 GB Samsung Evo" and "First 120GB Patriot") That He "Wiped" With CCleaner Days Before Imaging.**

On October 26, 2016, Plaintiff served its expert report, which set forth its evidence that not only had Defendant destroyed evidence by using CCleaner, but as well established that Defendant had *still* not produced all of his hard drives and computer devices, including devices which Mr. Paige had concluded Defendant had used to search for torrents. *Paige Report Oct. 26, 2016, ¶ 40, 41, Ex "E."*

---

[2] The second hard drive produced on September 23, 2016 was an external back-up hard drive that contained no operating system.

4

In light of Plaintiff's Expert Report, Defendant produced six (6) additional hard drives[3] on November 11, 2016, which included a "250 GB Samsung Evo" and a "First 120GB Patriot." *See Patrick Paige's Supplemental Expert Report dated December 9, 2016, ¶ 4, attached to the Declaration of Anthony Lupu as Exhibit "F."*

Mr. Paige established via forensic examination that Defendant used CCleaner to "wipe" both his 250 GB Samsung Evo and First 120GB Patriot on November 5, 2016 which was six (6) days prior to imaging. *Paige Supplemental Report, December 9, 2016, ¶ 10-13, Ex. "F."*

Mr. Paige also concluded that since Defendant's Samsung 250GB EVO and Defendant's First 120GB Patriot were both "wiped," it was impossible to ascertain the contents of the hard drives prior to wiping. *Paige Supplemental Report, December 9, 2016, ¶ 13, Ex. "F."*

Defendant himself admitted at his deposition on December 2, 2016 that he used CCleaner on the devices, but falsely stated that he last did so August 2016. *Defendant's Deposition 115:22-116:19, Ex "B."*

E. Defendant's Expert, Michael Yasumoto Will Not Rebut Any of Paige's Conclusions Regarding Defendant's use of CCleaner.

Defendant's expert, Michael Yasumoto, produced multiple reports in this case, and has not and will not rebut the conclusion that Defendant used CCleaner on at least four (4) of the produced hard drives, all of which occurred was installed and used *after* Defendant was notified of this lawsuit in November 2015.

Upon information and belief, at deposition,[4] Mr. Yasumoto stated that he agreed with Mr. Paige's conclusion that CCleaner had been used on both the Samsung 250GB EVO and Defendant's

---

[3] The remaining four hard drives produced that date were i) a 500GB Western Digital Hard Drive, which was a copy of the first hard drive produced, the Solid State Drive. *Defendant's Deposition 115:9-15 Ex "B";* ii) a Second 120GB Patriot (with an operating system install date of March 5, 2016); iii) a USB Thumb drive and iv) a 1TB Seagate Slim, which allegedly belonged to Defendant's father and sister-in-law, respectively. *Defendant's Deposition 115:22-116:8, Ex "B."*
[4] Mr. Yasumoto's deposition was taken on January 31, 2016, and the transcript is not available as of the filing of this motion.

First 120GB Patriot.  However, curiously Mr. Yasumoto made absolutely no mention of the use of CCleaner in any of his reports regarding of any devices.

## IV.   HARD DRIVES AND COMPUTER DEVICES THAT DEFENDANT WHOLLY FAILED TO PRODUCE.

### A. Defendant Failed to Produce at Least Two (2) Additional Hard Drives Which Defendant Admitted Were in Use During the Period of Infringement – the "Western Digital 1 TB Hard Drive" and the "Family Spare Hard Drive."

**Western Digital 1 TB Hard Drive**.  Defendant produced a receipt in discovery, indicating that he had purchased a Western Digital 1 TB hard drive on November 20, 2013.  *Defendant's Response to Request for Production, Bates Nos. S1-006, Ex. "D."*  Defendant stated that he had used the Western Digital 1 TB internal hard drive in a "Corsair 600T" computer for approximately two (2) years, from November 2013 to November 2015.  *Defendant's Deposition 82:2-85:17, Ex. "B."*  This is during the period of infringement.  Defendant was notified of suit in November 2015, the same month he claims he stopped using the hard drive.  *Defendant's Deposition 107:3-5, Ex "B."*  Defendant never produced the drive, stating that he removed it from his computer because he "wanted to use it somewhere else temporarily."  Defendant claims that he was unable to locate the drive.  *Defendant's Deposition 82:24-83:13, Ex "D."*

Significantly, Mr. Paige identified the Western Digital 1 TB hard drive as one of the missing hard drives in his reports.  *Paige Report dated October 26, 2016, ¶ 41, 43; Paige Supplemental Report dated December 9, 2016, ¶ 14, Ex "F."*

**Family "Spare" Hard Drive A8-3870**.  Defendant testified that his "A8-3870" computer first became operational in May 2015, when he placed it in a Corsair 250D case.[5]  *Defendant's Deposition 97:23-99:22, Ex "D."*

Defendant testified that when he starting using the computer in May 2015, he began using one of his "family's spare [hard] drives" in the A8-3870, and used it until late 2015.  *Defendant's*

---

[5] It is unknown if Defendant is being truthful about this date, because he made contradictory statements about the date of first operation of the A8-3870.

1  *Deposition* 99:13-100:17*, Ex "D."*  Again, this is during the period of infringement, and Defendant

2  was notified of suit in November 2015.  *Defendant's Deposition 107:3-5, Ex "B."*  Defendant stated

3  that he did not turn over the "family's spare hard drive" because he does not know where it is, and

4  does not know what happened to the hard drive.  *Defendant's Deposition 99:13-100:17, Ex "D."*

5        B.  <u>Paige Concluded in His Expert Reports That Three (3) Additional Computer Devices</u>

6          <u>Were Never Turned Over, including the "i7-970" device.</u>

7        In addition to four (4) hard drives having CCleaner on them, and two (2) hard drives not

8  having been turned over, Mr. Paige also concluded that the following devices or computers were

9  never turned over for examination, including the following:

10  **Surface Tablet**: *Paige Report dated October 26, 2016, ¶ 41, 42; Paige Supplemental*

11  *Report, December 9, 2016, ¶ 14, Ex. "F."*

12  **DESKTOP-PNBVP70** computer device, which Paige concluded was used to search for

13  Torrent files, based on Google SychnData artifacts; *Paige Report dated October 26, 2016, ¶ 41, 48,*

14  *Ex. "E"; Paige Supplemental Report dated December 9, 2016, ¶ 14, Ex "F."*

15  **i7-970** computer, which also was a device that Paige concluded had been used to search for

16  Torrent files, and which was used throughout 2015, including during the period of infringement.

17  *Paige Report dated October 26, 2016, ¶ 41, 48, Ex. "E."; Paige Supplemental Report, December 9,*

18  *2016, ¶ 14-15, Ex. "F."*

19        C.  <u>Defendant failed to turn over any of the hard drives that were used in his "Corsair 350D"</u>

20          <u>from 2013 to 2016.</u>

21        As discussed below in section regarding perjury, at deposition, Defendant represented that

22  one of his computers, a Corsair 350D, was only operational in March 2016 and that it was solely

23  used until August 2016.  *Defendant's Deposition 85:18-86:24, Ex "B."*  Defendant specifically

24  denied that the Corsair 350D was operational from September 2013 to March 2016.  *Defendant's*

25  *Deposition 86:5-24, Ex "B."*  Those statements were false.  Forum posts establish that Defendant

26  built a Corsair 350D computer in late 2013.  *Overclock Oct. 3, 2013, Nov. 18, 2013, Dec. 13, 2013,*

27  *April 16, 2015, Ex. "H"; Defendant's Deposition 81:14-20, Ex. "B."*

28

Significantly, because Defendant falsely denied the Corsair 350D was operational from 2013 to 2016, Defendant never accounted for the hard drives that he used in the Corsair 350D from late 2013 to March 2016, which includes the period of infringement.  Accordingly, Defendant not only committed perjury, but as well, has failed to turn over or identify all the hard drives that he used in the Corsair 350D from 2013 to 2016.

## V.    DEFENDANT REPEATEDLY COMMITTED PERJURY IN THIS CASE.

A.    <u>Defendant Committed Perjury About the Number of Computer Devices Used In His Home During the Period of Recorded Infringement.</u>

In his interrogatory responses, Defendant testified that only had one computer device in his home in the preceding three years, which he did not use that much "except to check for updates and light internet use."  *Defendant's Reponses to Plaintiff's First Set of Interrogatories, No. 4, Ex. "C."*

This was false.  Defendant is an extremely sophisticated computer user, who has multiple computers.  He posted repeatedly on Overclock.net, a custom-computer build forum website, and is able to build a computer in 5-8 hours, and perform computer "replacement work" in 30 minutes. *Overclock, dated Oct. 16, 2013, attached to the Declaration of Anthony Lupu as Exhibit "H."*

At deposition, after being directly confronted with forum postings, Defendant eventually testified to having at least five other computers built and in operation at various times from 2013 to 2016 including but not limited to, the "i7-970" computer[6] (which is one of the computers that Mr. Paige had indicated had never been turned over for examination, but which was used during the period of infringement); an HP Laptop;[7] an AMD X4-970;[8] a Corsair 600T;[9] and a Corsair 350D.[10]  All of these computer devices should have been identified in Response to First Set of Interrogatories. However, none of the devices were identified.

---

[6] *Defendant's Deposition, 58:9-18; 61:16-63:7, Ex. "B"; SAS 012-13, Sept. 23, 2011, Ex. "I."*
[7] *Defendant's Deposition, 60:3-61:5, Ex. "B"; SAS 012-13, Sept. 23, 2011, Ex. "I."*
[8] *Defendant's Deposition, 69:17-70:23, Ex. "B"; SAS 012-013, Sept. 23, 2011, Ex. "I."]*
[9] *Defendant's Deposition 72:14-74:23; 82:2-83:25, Ex. "B."*
[10] *Defendant's Deposition, 81:14-20; 85:18-24; 86:5-24, Ex. "B."*

B.  <u>Defendant Committed Perjury About the Number of Hard Drives Used in His Home During the Preceding Three Years.  Deposition Established that Defendant Had At Least Eight (8) Hard Drives In Use from 2013 to 2015.  However, None of the Hard Drives Were Referenced in Defendant's Responses to First Set of Interrogatories, Nor Turned Over.</u>

As discussed, Defendant testified that he only had one computer device in his home in the preceding three years. *Defendant's Reponses to Plaintiff's First Set of Interrogatories, No. 4, Ex. "C."*  That response, as discussed, is false.  Defendant i) wound up producing multiple hard drives that he used CCleaner on; ii) failed to produce at least two (2) hard drives that he admits were in use during the period of infringement; and iii) admitted at deposition that he had at least five (5) other computers in his home.  Paige also determined that three (3) additional devices had not been turned over.

Irrespective, at deposition, Defendant testified that from 2013 to 2015 he E-wasted, loaned, or broke <u>at least eight (8) hard drives</u>, including a 700GB Torrent drive, with the majority of the disposals allegedly occurring in August 2015 and October 2015, during the period of infringement.

Not coincidentally, many of the hard drives he claims he disposed of are from his "i7-970," which Paige had identified as one of the devices that had not been turned over.

The hard drives that Defendant identified at deposition (and only after being shown forum postings of computers) include, but are not limited to, the following:

i.  **700 GB Torrent Drive ("i7-970")**.  When first asked about the 700GB Torrent drive which was reflected in a forum post, Defendant denied ever owning one.  *Defendant's Deposition, 41:13-25, Ex. "B."*  Only when confronted with the forum post did Defendant not only admit to owning a 700 GB torrent drive, but also admit that this hard drive was specifically used to illegally download adult content and movies via BitTorrent. *Defendant's Deposition, 64:25-65:9, Ex. "B."*  Defendant stated he "may have loaned out" the 700GB Torrent drive in 2013, but could not identify the person to whom he "loaned it," had trouble recollecting when he "loaned" it, and had no

specific memory of loaning out the hard drive.  *Defendant's Deposition* 58:9-18; 61:16-66:21, *Ex "B"; SAS 012-013, Sept 23, 2011, Ex. "I."*

ii.    **500 GB Game Saved Drive ("i7-970")**.  Defendant stated that he had a 500 GB Game Saved drive, but does not have it anymore because he "think[s]" he may have given it to somebody" or "may have loaned it" in 2014, but cannot recall to whom he gave it.  *Defendant's Deposition 58:9-18; 61:16-63:10; 65:7-67:20, Ex "B"; SAS 012-013, Sept 23, 2011, Ex. "1."*

iii.    **Crucial Solid State Drive, 128 GB hard drive ("i7-970") (E-wasted August 2015)**.  Defendant testified that in most of 2014 and early 2015, his "i7-970" had a Crucial Solid State Drive, 128 GB hard drive, but he E-wasted it in August 2015.  *Defendant's Deposition 77:7-21, Ex "B."*

iv.    **Unknown Hard Drive ("i7-970") (E-wasted August 2015).**  On February 6, 2015 (the beginning of the period of infringement) Defendant posted a picture of his i7-970 on a forum.  Defendant stated that he did not know what hard drive he was using on the pictured computer, but states that it was nonfunctioning and he e-wasted it in August 2015.  *Defendant's Deposition 86:25-88:14; 92:5-21, Ex "B"; Overclock 012, Ex. "H."*

v.    **Kingston 64 GB solid state drive ("i7-970") ("Broke" in April 2015)**.   Defendant stated that the Kingston 64 gigabyte solid state drive was in use in February 2015, March 2015 and April 2015.  Defendant stated that he "believes" he broke the hard drive in April 2015.  *Defendant's Deposition 94:20 -96:23, Ex "B."*

Additional hard drives from other devices that Defendant is unable to verifiably account for include the following:

vi.    **100GB Hard Drive (HP Laptop) (E-wasted August 2015)**.  Defendant stated, after being shown a forum posting, that he had an HP Laptop, which had a 100 GB hard drive.  Defendant claimed he "E-wasted" the hard drive in August 2015.  *Defendant's Deposition 21:5-22:25; 30:6-31:18; 60:3-61:5, Ex "B."*

vii.  **500 GB Hard Drive (x4-970) (E-wasted October 2015)**.  Defendant stated that he got rid of a 500 GB hard drive in October 2015 by "E-wasting" it.  *Defendant's Deposition* 69:17-70:10*, Ex "B."*

viii.  **250 GB Hard Drive, Western Digital (x4-970) (Disposed of October 2015)**.  Defendant stated that he got rid of his 250 GB Western Digital Hard Drive in October 2015.  *Defendant's Deposition* 70:11-23*, Ex "B."*

Plaintiff believes that Defendant is simply not credible when he explained what occurred to the hard drives.  Defendant claimed that the majority of the disposals occurred in August 2015 and October 2015, shortly before he was notified of suit.  However, all of his explanations for the disposals are unverifiable and self-serving.  Defendant could never identify any person to whom he gave any of the hard drive, had trouble recollecting when the hard drives were disposed of, and even stated "I don't know" when asked if the E-waste company ever provided him with a receipt for any of the hard drives or products he gave them.  *Defendant's Deposition 110:19-111:2, Ex "B."*

Irrespective, even in the light most favorable to Defendant, he still committed perjury by failing to identify each of these eight (8) hard drives in his Responses to First Set of Interrogatories.

C.  <u>Defendant Committed Perjury in this case by denying his use of BitTorrent.</u>

Defendant stated under penalty of perjury that: (i) he never knowingly downloaded a song, movie, game, software program or computer file using BitTorrent or any Peer-to-peer file sharing program; (ii) he never searched for any torrent file on the internet.  *Defendant's Responses to Plaintiff's First Set of Interrogatories Nos. 13, 17, Ex. "B."*  Discovery proved that each of Defendant's responses is false.

First, Patrick Paige's forensic examination of Defendant's "Solid State Drive" contained search hits for the titles of BitTorrent Client software that was used to infringe Plaintiff's works, and the "Solid State Drive" contained evidence of BitTorrent content searches.  *Paige Report Oct. 26, 2016, ¶ 36, 40, Ex. "E."*  Further, Paige concluded that Defendant's "Solid State Drive" contained evidence of BitTorrent content searches.  Paige also discovered evidence proving that Defendant used

computer devices titled "DESKTOP-PNBVP70" and "i7-970"[11] to search for pornographic BitTorrent movies on BitTorrent sites such as "rarbg.to" and "pornleech.com." *Paige Report Oct. 26, 2016, ¶ 40, Ex "E."*

Second, on multiple forum posts, Defendant admits using BitTorrent.  On June 17, 2011, under the Fleshlight.com forum thread titled, "Porn…Free or Pay???"  Defendant boastfully admits that he uses torrents to obtain pornographic works.  When asked if he pays for or obtains pornography for free, Defendant answers: "torrent, for sure. sux [sic.] to have wasted money on a DVD, only later to not like it."  *FL 07, Ex. "J."*  Further, Defendant had bragged, *for years*, about his interest and use of torrents in forum postings.  For example, Defendant told forum members that he would be playing the game "Rage," once the "8GB torrent finishes." *SAS 032, Ex. "I."*  He publically bemoaned that his Internet speeds were too slow when he used torrents to download games. *SAS 038, Ex. "I."*  He also stated that he gets his "anime" fix from "nyaatorrents[,]" a BitTorrent website with "one of the largest public anime-dedicated torrent indexes."[12] *SAS 055, Ex. "I."*  Defendant not only downloaded music via BitTorrent, he advised other Internet forum members where to do so as well.  *SAS 0110; 0181, Ex. "I."*  He advised forum members that it is more cost effective to torrent games. *Overclock, Dec. 15, 2011, Ex. "H."*  In one post, Defendant stated that the "healthy torrent scene is kicking still" and admits that he "enjoy[s] the fact that [he] doesn't have to pay for show like Top Gear (BBC) because of dedicated website[s] for episode torrents." *Overclock 05, Ex. "H"; SAS 049, Ex. "I."*  Defendant brazenly mocked DVD anti-piracy warnings, and re-posted a chart illustrating how much easier and cost-effective it is to pirate a movie, as opposed to legally purchasing it.  *Overclock, May 16, 2012, Ex. "H."*  Lastly, Defendant publically admitted to using PirateBox, "a portable electronic device […] that allows users who are connected to share files anonymously and locally[,]"[13] and

---

[11] Neither the DESKTOP-PNBVP70 or i7-970 have been turned over.  *Paige Report dated October 26, 2016, ¶ 43, 48, Ex. "E."; Paige Supplemental Report dated December 9, 2016, ¶ 14, 15, 16, 17, Ex "F.".*
[12] https://en.wikipedia.org/wiki/Nyaa_Torrents (Last Accessed on January 16, 2017)
[13] https://en.wikipedia.org/wiki/PirateBox (Last Accessed January 16, 2017)

admits to using this device while at work.  *PirateBox 012, 015, attached to the Declaration of Anthony Lupu as Exhibit "L."*

Third, Defendant stated at deposition that he downloaded films from BitTorrent because it was simply easier to not pay for it, and have the material readily available through torrents. *Defendant's Deposition 43:2-45:11, Ex "B."*  Defendant stated he was concerned that what he was doing was "wrong," however, he did so because he simply did not "want to wait a long time, when it's available now for consumption."  *Defendant's Deposition 49:9-25, Ex "B."*  Defendant even admitted that he was concerned that when he downloaded films that he may have been infringing somebody's copyright. *Defendant's Deposition 43:14-22, Ex "D."*

It is clear that Defendant's denials of using BitTorrent to illegally download copyright works are perjurious.  In fact, it was only after reviewing Mr. Paige's expert reports and Defendant's own online forum posts, did Defendant admit to downloading mainstream movies, adult-content movies, games, and music using Torrents.  *Defendant's Deposition, 42:19-23, 45:12-49:25, Ex. "B."*

D. <u>Defendant Committed Perjury in this Case by Falsely Representing that he Did Not View Pornography</u>

Defendant denied watching adult-content movies except for twice in high school. *Defendant's Responses to Plaintiff's First Set of Interrogatories, No. 18, Ex. "C."*

Defendant shares, in detail, his interest in pornography. *SAS 059, Ex. "I."*  He states that he is addicted to three things, including "internet porn," and "computer." *SAS 074, Ex. "I."*  He further admits that he "watch[es] too much porn for [his] own good," and even suggests that he watches porn when he is at work. *SAS 065, Ex. "I."*  And, public forum posts show that Defendant creates and publishes his own pornographic animation.  *Torrents 01-04, attached to the Declaration of Anthony Lupu as Ex. "K."*  He states that he is scared of the "new tab displaying all my porn sites I frequent daily."  *Overclock 06, June 12, 2012, Ex. H.*  Lastly, in response to a thread entitled "Show your porn viewing place," Defendant posted a picture of his computer set-up, which has *three* monitors. *FL065, Ex. "J."*

E.  <u>Defendant Committed Perjury at Deposition When He Falsely Stated that he Was Unable
to Remotely Access His Home Computer From Work</u>

As part of his defense, Defendant claims that he could not have possibly infringed Plaintiff's
works because he was at work during specific dates and times of infringement.  Plaintiff rebutted this
argument by asserting that Defendant could have remotely accessed his home computers from work.
*Paige's Supplemental Report dated December 16, 2016, ¶¶ 18-23, Ex. "F."*

At deposition, Defendant was asked if he could remotely access his home computer form work
at any time between 2011 through 2016:

> Q. By the way, when you're at work, can you remotely access your home computer?
> A. No, sir.
> Q. At no time –
> A. No.
> Q. – during 2011 to 2016?
> A. No.

*See Defendant's Deposition, 35:16-22, Ex. "B."*

That statement is brazenly false.  Multiple forum posts memorialize Defendant being at
work, remoting in to his home computer.  In a forum post dated December 23, 2011, Defendant
states that he has 3 computer screens at home, and that the "only main con I have is when remoting
in from work: we have a single 21' widescreen as a display, and when I remote to my home pc, the
resolution at home is so large, that it has to scale super tin, causing lag because of the full screen
rendering."  *Overclock, December 23, 2011, Ex. "H."*  He states in a post dated February 22, 2012
that "I just remoted in to my home PC from work to sign up.  I ran the diagnostic tool, and am
awaiting confirmation." *Overclock, February 22, 2012, Ex. "H."*  "I remoted to my computer from
work to start my DL [download]."  *Overclock March 15, 2012, Ex. "H."* "Anyone been able to
change their video options?  I got to the main menu and was able to access the video option… am
remoting in from work to try gaining access, even for a few minutes." *Overclock April 20, 2012, Ex.
"H."*

F.  Defendant Committed Perjury In This Case By Falsely Representing That His Corsair 350D Computer Was Only Built in 2016 – It Was Built in 2013.

As previously discussed, Defendant represented at deposition that his Corsair 350D computer was only operational in March 2016 and that it was solely used until August 2016. *Defendant's Deposition* 85:18-86:24, *Ex "B."*  Defendant specifically denied that the Corsair 350D was operational from September 2013 to March 2016.  *Defendant's Deposition* 86:5-24, *Ex "B."*

However, those statements were false.  Forum posts establish that Defendant built a Corsair 350D computer in late 2013.  *Overclock Oct. 3, 2013, Ex. "H"; Dec. 13, 2013, Ex. "H"; Overclock April 16, 2015, Ex. "H"; Defendant's Deposition 81:14-20, Ex. "B."*

Not only did Defendant commit perjury, he failed to turn over the hard drives he used in the Corsair 350D from 2013 to 2016.

## VI.  DEFENDANT PRODUCED AN INACCURATE AND POSSIBLY ALTERED VERSION OF HIS EMPLOYMENT RECORDS.

At deposition, Defendant produced his employment records, which consisted of a February 2015 and August 2015 monthly schedule, and timesheets from various weeks, including August 10, 2015 to August 23, 2015.  None of the records were signed.  *Employment Records produced at deposition, attached to the Declaration of Anthony Lupu as Exhibit "M."*  The produced weekly timesheets indicated that Defendant worked for five (5) hours on August 18, 2015 and six (6) hours on August 19, 2015.  *Produced Employment Records, 1.002-52, attached to the Declaration of Anthony Lupu as Exhibit "M."*

The significance of August 18, 2015 is that Excipio's system detected infringing activity on that date that began on August 18, 2015 at 11:05 a.m., and which continued throughout the day and evening, with various break times, until 12:03 a.m. on August 19, 2015.  *See Exhibit 7 to the Deposition of Defendant, Ex. "B."*

Defendant stated at deposition that he was provided the monthly calendar by his supervisor, Renee. *Defendant's Deposition, 131:2-24, Ex. "B."*  With respect to his biweekly timecards, Defendant stated that he simply fills in the number of hours he worked on an Excel spreadsheet

located at his workstation, but that he does not note the specific hours worked.  *Defendant's Deposition, 132:25-135:11, Ex. "B."*

Defendant initially stated that the produced weekly Excel file was sent directly from his workstation, but he then indicates that his supervisor sent the Excel file to him, which he forwarded to his counsel. *Defendant's Deposition, 141:2-24, Ex. "B.".*  Defendant was asked why he didn't simply send the Excel file directly himself (as it was located at his workstation), and Defendant is unable to provide a direct response, indicating that he requested a "printout" from his supervisor, and the produced documents were provided.  *Defendant's Deposition, 142:6-144:25, Ex. "B."*

Plaintiff subpoenaed the records to authenticate them.  Upon review, the records do not indicate that Defendant had worked for five (5) hours on August 18, 2015.  Rather, Defendant worked for four (4) hours on August 18, 2015 and took one (1) hour for "Leave Hours / Sick Leave." *Subpoenaed Employment Records, attached to the Declaration of Anthony Lupu as Exhibit "N."*

While Plaintiff concedes that there may be an innocuous explanation for the discrepancy, Defendant has not earned himself the benefit of the doubt, and there may be a troubling, sanctionable action behind the inconsistency.

## VII.    LEGAL STANDARD FOR SPOLIATION SANCTIONS

Courts throughout the Ninth Circuit universally apply a three-part test when determining whether sanctioning a party for spoliation is appropriate. The court analyzes whether:

(1) the party with control over the evidence had an obligation to preserve it at the time of destruction;

(2) the evidence was destroyed with a "culpable state of mind"; and,

(3) the evidence was relevant to the party's claim or defense.

*Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 625–28 (C.D. Cal. 2013); *In re Hitachi TV Optical Block Cases*, 2011 U.S. Dist. LEXIS 90882, at *16 (citing *Zubulake IV*, 220 F.R.D. at 220; *Slep-Tone Entm't Corp. v. Granito*, 2014 U.S. Dist. LEXIS 2023, *7–8 (D. Ariz. Jan. 7, 2014) (citations omitted); *Veolia Transp. Servs. v. Evanson*, 2011 U.S. Dist. LEXIS 136544, *6–7 (D. Ariz. Nov. 28, 2011).

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence[,] in pending or reasonably foreseeable litigation.'" *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 625–28 (C.D. Cal. 2013) (citing *Zubulake v. UBS Warburg LLC ("Zubulake IV")*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999))). "There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. Wash. 2006) (citing *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337–38, (9th Cir. 1985); Fed. R. Civ. P. 37(b)(2)(C)). "The authority to impose sanctions for spoliation arises from a court's inherent power to control the judicial process." *Reinsdorf*, 296 F.R.D. at 625. "Inherent powers, however, must be exercised with restraint and discretion." *In re Hitachi TV Optical Block Cases*, 2011 U.S. Dist. LEXIS 90882, *18 (S.D. Cal. Aug. 12, 2011) (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

Despite the broad discretion given to trial courts to impose sanctions for spoliation, "[t]he exercise of a court's inherent powers must be applied with 'restraint and discretion' and only to the degree necessary to redress the abuse. Accordingly, the determination of an appropriate sanction for spoliation is 'confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis.'" *Reinsdorf*, 296 F.R.D. at 625 (citations omitted).

## VIII.   DEFENDANT SHOULD BE SANCTIONED FOR SPOLIATION

### A.   Defendant Intentionally Spoiled At Lease Four (4) of His Computer Device Hard Drives

#### 1.   Defendant Had Control of and a Duty to Preserve the Hard Drives

Defendant had exclusive control over his computers and hard drives during the relevant period. *Cf. In re Hitachi TV Optical Block Cases,* 2011 U.S. Dist. LEXIS 90882 at 47.  He is the only possible spoliator.  Indeed, Defendant did not testify that the hard drives where ever in the possession of anyone other than himself.

1    Moreover, Defendant had a duty to preserve the drives.  While the duty to preserve evidence

2 may attach on Defendant prior to his notice of a live action against him, courts in this Circuit have

3 definitively held that this duty at least attaches at the time Defendant is on notice. *See e.g.*, *Reinsdorf*,

4 296 F.R.D. at 626–27 ("[T]he obligation to preserve evidence, 'arises when the party has notice that

5 the evidence is relevant to litigation or when a party should have known that the evidence may be

6 relevant to future litigation.'") (quoting *Zubulake IV*, 220 F.R.D. at 216)); *Keithley v. Home*

7 *Store.com, Inc.*, 2008 U.S. Dist. LEXIS 61741, *47–48 (N.D. Cal. Aug. 12, 2008) (litigation hold).

8    Here, Defendant first learned of the instant lawsuit in November 2015. *See Defendant's*

9 *Deposition 107:3-5, Ex. "D."*  As such, in November 2015, Defendant had knowledge that Plaintiff

10 had filed a lawsuit against Defendant for infringing Plaintiff's works via BitTorrent and that any

11 computer device capable of using the BitTorrent protocol would be highly relevant.  Since the

12 complaint alleges Defendant downloaded digital files through BitTorrent protocols, Defendant also

13 had strong reasons to know that his computer devices and Internet history were material and relevant

14 to this action.  Further, Defendant had retained an attorney by December 30, 2015 and a forensic

15 computer expert by January 29, 2015, and virtually all of the hard drive spoliation occurred after that

16 time (with the partial exception being the Solid State Drive, which he began to destroy December 10,

17 2015 and continued to do so through to April 3, 2016).

18    **2.  Defendant Had Culpable State of Mind**

19    A party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of

20 sanctions." *UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc.*

21 *Copyright Litig.)*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006). However, a party's motive or degree

22 of fault in destroying evidence is relevant to what sanction, if any, is imposed." *See Realnetworks,*

23 *Inc. v. DVD Copy Control Ass'n*, 264 F.R.D. 517, 523 (N.D. Cal. 2009) (citations omitted); *In re*

24 *Hitachi TV Optical Block Cases*, 2011 U.S. Dist. LEXIS 90882 at 19–20 ("Motive or degree of fault

25 in destroying the evidence, however, should be considered in choosing the appropriate sanction.")

26 "At a minimum, the culpable state of mind is negligence." *Olney v. Job.com*, No. 1:12-cv-01724-

27 LJO-SKO, 2014 U.S. Dist. LEXIS 152140, at *38 (E.D. Cal. Oct. 24, 2014).

28

1    In the case at hand, Defendant's actions went beyond the pale of mere negligence - he

2  consciously and detrimentally altered and deleted evidence *after* having notice of the suit.

3    As previously discussed, Defendant intentionally spoiled four (4) hard drives.

4    <u>Solid State Drive.</u> Defendant spoiled the Solid State Drive on December 10, 2015, very shortly

5  after lawsuit notification.  Defendant installed Windows 10 and deleted the "windows.old" files.  He

6  then installed CCleaner on December 12, 2015, and ran it run numerous times thereafter, the last of

7  which was on April 3, 2016 – days before he turned it over for expert imaging on April 20, 2016.

8  *Paige Report Oct. 26, 2016, ¶ 26, 28, 29, Ex "E." Defendant's Deposition 109:12-110:1, Ex "B."*

9    Paige established that Defendant had knowledge of the lawsuit, and searched for Malibu

10 Media lawsuit information, by November 30, 2015. *Paige Report Oct. 26, 2016, ¶ 21-25, Ex "E."*

11 It is simply incredible to claim that Defendant installed a new operating system and CCleaner on his

12 computer with any other intent than to destroy relevant evidence.  In fact, if Defendant, a sophisticate

13 computer builder, is as innocent has he apparently claims, he would have bent over backwards to

14 ensure that all relevant evidence was preserved in its pristine state.

15    <u>250 GB Western Digital hard drive.</u>  Defendant had installed Windows 7 and CCleaner on the

16 "250 GB Western Digital" hard drive on February 14, 2016.  *Paige Report Oct. 26, 2016, ¶ 17, 35*

17 *Ex "E."*  By this time, Defendant had been aware of the lawsuit for months.

18    By the time evidence on the 250 GB Western Digital hard drive was destroyed, Defendant

19 had had an attorney for six (6) weeks. *See Notice of Appearance, December 30, 2015, Document No.*

20 *16.*  Also, by February 14, 2016, when he installed a new operating system and CCleaner on the 250

21 GB hard drive, Defendant had retained a forensic computer analyst to examine his hard drives, and

22 the forensics expert, Mr. Yasumoto, had even picked up a different hard drive owned by Defendant

23 two weeks previous on January 29, 2016 for forensic analysis.[14]  *See Michael Yasumoto Expert Report*

24

25 [14] Interestingly, at deposition (which took place on January 31, 2016) Mr. Yasumoto testified that
   he was not given the Solid State Drive (which was the first hard drive produced to Plaintiff) on

26 January 29, 2016.  Instead he was given a "back up" copy of the Solid State Drive, a Western
   Digital 500 GB drive.  Mr. Yasumoto drafted his report dated March 23, 2016, in which he

27 expressly indicated he could not rule out Torrent use on the 500GB drive, and asked counsel for
   Defendant if he could examine the original Solid State Drive.  Defendant produced the Solid State

28

1   *dated March 28, 2016, attached as Exhibit "G" to the Declaration of Anthony Lupu.*  Nevertheless,

2   Defendant still installed a new operating system, and CCleaner on his 250 GB Western Digital hard

3   drive even after retaining counsel and a forensics expert.

4      "250 GB Samsung Evo" and "First 120GB Patriot."  On October 26, 2016, Plaintiff served

5   its expert report, which set forth its evidence that Defendant destroyed relevant evidence, and had still

6   not produced all of his hard drives.  *Paige Report Oct. 26, 2016, ¶ 40, 41, Ex "E."*

7      Defendant then produced the "250 GB Samsung Evo" and a "First 120GB Patriot" on

8   November 11, 2016, one month before discovery cut-off.  However, Paige established that Defendant

9   used CCleaner to wipe both the 250 GB Samsung Evo and First 120GB Patriot on November 5, 2016

10   which was six (6) days prior to imaging. *Paige Supplemental Report, December 9, 2016, ¶ 10-13, Ex.*

11   *"F."*

12      By this time, of course, Defendant had been involved in the litigation for one year, and had

13   been represented by counsel for twelve (12) months.  His expert, Mr. Yasumoto, who had been on-

14   board since January 29, 2016, had examined multiple hard drives and drafted six (6) reports, and

15   Plaintiff's expert, Mr. Paige had detailed all of his finding regarding the use of CCleaner and its

16   effect on the evidence in his October 26, 2016 report.

17      It is simply beyond belief for Defendant to claim that the use of CCleaner and reinstalling his

18   operating systems were anything but deliberate acts to destroy relevant evidence.  Defendant's state

19   of mind was willful. *Veolia Transp. Servs. v. Evanson*, 2011 U.S. Dist. LEXIS 136544, 11 (D. Ariz.

20   Nov. 28, 2011) ("[Defendant] acted at least willfully here, and likely in bad faith. [Defendant] was

21   aware of Veolia's subpoena and had obtained counsel prior to her destruction of the evidence; indeed,

22   it seems likely that she had her hard drive imaged for purposes related to this litigation. That after

23   receiving Veolia's subpoena and having her hard drive imaged, [Defendant] then install[ed] a new

24   
_____

25   Drive to Mr. Yasumoto on April 13, 2016 – after he had used CCleaner on it multiple times.
Thereafter, Defendant produced to Plaintiff the Solid State Drive, and Mr. Yasumoto's "new report"

26   dated July 1, 2016.  The "new report" never made mention of the Western Digital 500 GB drive
(which also was not referenced in the responses to interrogatories dated July 5, 2015).  The Western

27   Digital 500 GB was turned over November 11, 2016.  Upon information and belief, the March 23,
2016 report was never turned over until Mr. Yasumoto's deposition on January 31, 2016.

28

1  hard drive and refused to pay the imaging company to maintain the image of her hard drive amounts
2  to a willful destruction of that evidence."); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th
3  Cir. 2006) ("The district court concluded that Leon's behavior amounted to willful spoliation because
4  he knew he was under a duty to preserve all data on the laptop, but intentionally deleted many files
5  and then wrote a program to write over deleted documents.")

6  **3.  Defendant Computer Hard Drives are Material and Relevant to this Lawsuit**

7  "[W]here the computer itself is at the heart of the litigation-where it is, in effect, an
8  instrumentality of the alleged copyright infringement - it is plainly relevant . . . ." *Capitol Records,*
9  *Inc. v. Alaujan*, 593 F. Supp. 2d 319, 321 (D. Mass. 2009).  Defendant's computer hard drives are
10  plainly relevant to this litigation.  "[Defendant] knew or should have known that the computer's
11  memory was relevant to the lawsuit against him because he received notice of the action against him
12  on March 9, 2005 -- sixteen days before he wiped the hard drive clean." *Paramount Pictures Corp.*
13  *v. Davis,* 234 F.R.D. 102, 111 (E.D. Pa. 2005).  Since the spoliation was done in bad faith, the
14  presumption weighs in Plaintiff's favor. *See Reinsdorf*, 296 F.R.D. at 627 ("When evidence is
15  destroyed in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate
16  relevance.") (citing *Zubulake IV*, 220 F.R.D. at 220).

17  The relevance standard is the same low bar found in the Federal Rules of Evidence 401. *See*
18  *Slep-Tone Entm't Corp.*, 2014 U.S. Dist. LEXIS 2023 at 16.  It is more likely than not that the
19  information altered and destroyed by Defendant related to Plaintiff's works or other BitTorrent
20  activities that would have aided in the identification and discovery process.  Indeed, the timing of
21  Defendant's actions strongly suggests the evidence was particularly relevant to the case at hand.

22  B.  Defendant Should be Sanctioned for Withholding Hard Drives and Producing Inaccurate
23      Employment Records

24  Not only did Defendant wipe several hard drives, Defendant failed to turn over at least two
25  (2) hard drives which Defendant admitted was in use during the period of infringement - the "Western
26  Digital 1 TB Hard Drive" and the "Family Spare Hard Drive."  Also, Paige concluded that three (3)
27  other devices and computers were never turned over for examination, including the following: i) a

28

Surface Tablet; ii) a DESKTOP-PNBVP70; and iii) an i7-970 computer.  Last, Defendant withheld any and all hard drives that he used in the Corsair 350D from 2013 to 2016, because he falsely represented that it was not operational during those years.

As set forth above, Defendant had control over these drives, knew he had an obligation to produce the drives, and the drives and devices are relevant to the litigation.

Further, the documents relating to Defendant's employment records contained information different from that produced by his actual employer.  *See* Exhibit M and N.  Given Defendant's counsel's vigorous opposition to Plaintiff's request to verify these documents (CM/ECF 123; 125; 128; 126) and Defendant's voluminous discovery violations, Defendant's failure to give accurate copies is, at best, suspicious.

C.  <u>Defendant Should be Sanctioned for Committing Perjury</u>

Civil perjury is identical to criminal perjury: "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Chamberlain v. Les Schwab Tire Ctr. of Cal., Inc.*, 2012 U.S. Dist. LEXIS 171325, *8 (E.D. Cal. Nov. 30, 2012) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).  "Lying under oath and submitting false discovery responses constitute deliberate misconduct warranting the sanction of dismissal." *Watkins v. Infosys*, 2015 U.S. Dist. LEXIS 96375, *11–12 (W.D. Wash. July 23, 2015) (citing *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) ("Dismissal is an appropriate sanction for falsifying a deposition.")).  "Dismissal is an appropriate sanction for perjury because committing perjury is tantamount to acting in bad faith." *Chamberlain*, 2012 U.S. Dist. LEXIS 171325, at *8 (citing *Arnold v. County of El Dorado*, 2012 U.S. Dist. LEXIS 112398, *4 (E.D. Cal. Aug. 9, 2012) *report and recommendation adopted*, No. 2:10-CV-3119 KJM-GGH (E.D. Cal. Sep. 27, 2012).

The record is replete with Defendant's perjury, including but not limited to:

i.   Defendant committed perjury in this case regarding the number of computer devices and hard drives used in his home during the period of recorded infringement;

ii.   Defendant committed perjury by denying his use of BitTorrent;

iii.   Defendant committed perjury by falsely representing that he did not view pornography;

iv.   Defendant committed perjury at deposition when he falsely stated that he was unable to remotely access his home computer from work;

v.   Defendant committed perjury at deposition when he falsely stated that he used CCleaner on his computer devices in August 2016, when forensics established that he had done so on November 6, 2011, days before production; and

vi.   Defendant committed perjury by falsely representing that his Corsair 350D was only built in 2016, when it was built in 2013.

Defendant's untruths were not mere mistakes of minor facts, but deliberate attempts to conceal the truth and throw the case. As the Supreme Court has observed, "[f]alse testimony in a formal proceeding is intolerable," and a court "must neither reward nor condone such a 'flagrant affront' to the truth-seeking function of adversary proceedings." *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 323 (1994) (citation omitted).  Severe sanctions are warranted for Defendant's material perjury.

## IX.   DEFENDANT SHOULD BE SANCTIONED UNDER RULE 26(E) AND RULE 37.

Rule 26(e) requires a party to supplement or correct a response to an interrogatory, or request for production in a timely manner if the party learns that in some material respect the disclosure is incomplete or inaccurate.

Rule 37(c)(1) further provides: "If a party fails to provide information . . . as required by Rule 26(a) or (e), . . . the court . . . may impose . . . sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." "The Ninth Circuit 'give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).'" *Bordegaray v. Cnty. of Santa Barbara*, 2016 U.S. Dist. LEXIS 173754, *33 (C.D. Cal. Dec. 13, 2016).   "Rule 37 sanctions are self-executing, automatic, and designed to provide a strong inducement for disclosure of material." *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 2015 U.S. Dist. LEXIS 8034, *5 (W.D. Wash. Jan. 23, 2015) (citations and internal quotations omitted).   "The party facing sanctions bears the burden of proving its failure to disclose the required information was substantially justified or is harmless." *Id.* at *6.

1    In the case at hand, Defendant failed to "supplement or correct" his perjurious interrogatory

2    statements and intentionally incomplete production responses.  In his response to the First Set of

3    Interrogatories, Defendant stated under penalty of perjury that he solely used one computer device

4    from 2013 to 2016, an AMD A8-3870 processor, and solely turned over an Encase image of a "Solid

5    State Drive" to Patrick Paige, Plaintiff's expert.  *See Patrick Paige Expert Report dated October 26,*

6    *2016, ¶ 13, attached to the Declaration of Anthony Lupu as Exhibit "E."*

7    However, there were many more computer devices and hard drives that he used from 2013 to

8    2016, including the two (2) hard drives that Defendant admitted he used during the period of

9    infringement -  the "Western Digital 1 TB Hard Drive" and the "Family Spare Hard Drive."  Further,

10   Defendant admitted at deposition that he had at least multiple other computers during that time,

11   including the HP Laptop; an AMD X4-970; a Corsair 600T; and a Corsair 350D.  None of these

12   devices were identified in Response to First Set of Interrogatories – but all of them should have been.

13   And, none of the eight (8) hard drives that Defendant self-servingly claimed, without corroboration,

14   that he disposed of were ever identified.

15   **X.    GIVEN THE EGREGIOUS NATURE OF DEFENDANT'S ACTIONS, JUSTICE**

16   **MERITS TERMINATING SANCTIONS**

17   Courts have the inherent power to impose default judgment when "'a party has engaged

18   deliberately in deceptive practices that undermine the integrity of judicial proceedings…, has

19   willfully deceived the court and engaged in conduct utterly inconsistent with the orderly

20   administration of justice.'" *Alt. Recording Corp. v. Howell* 2008 U.S. Dist. LEXIS 113242 citing *Leon*

21   *v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006)* (quoting *Anheuser-Busch, Inc. v. Natural*

22   *Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995)).*  Factors to evaluate when considering default

23   as a sanction include: "(1) the public's interest in expeditious resolution of litigation; (2) the court's

24   need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public

25   policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."

26   *Id.*

27

28

In *Alt. Recording Corp. v. Howell*, a similar copyright infringement lawsuit, the defendant was accused of using a file-sharing program KaZaa to download and distribute copyrighted works. Defendant removed the file-sharing music program, "KaZaa," from his computer and deleted the content of a shared folder after receipt of notice of the lawsuit.  Howell also downloaded a program called Aevita Wipe & Delete shortly after he filed his answer in this suit.  Thereafter, in the middle of the discovery period, he used that program to permanently delete all traces of certain files on his computer.  After taking these steps, Howell testified to facts that could not be disproved because he had destroyed the pertinent evidence. A forensic examination also showed that Howell had reinstalled his computer's operating system a few weeks after he had received their requests for copies of various files on his computer.

The Court imposed a default judgment sanction.  In doing so, the Court found that "[i]t is entirely incredible that his systematic and pervasive destruction of every last bit of evidence pertaining to the claims against him was simply an effort to tidy up his computer… [t]he timing and character of Howell's actions show that they were deliberately calculated to conceal the truth and that he willfully destroyed evidence to deceive the court."  *Id*.  The Court also found that such a process undermined the judicial proceedings and without the evidence, the plaintiffs could not proceed with their case:

> Howell's brazen destruction of evidence has wholly undermined the integrity of these judicial proceedings. The evidence that Howell destroyed could have been used to determine the origin of the music files, their locations on the hard drive, the settings and integrity of the KaZaA software, and many other relevant facts. Without these facts, the recording companies and the court are unable to examine the factual accuracy of Howell's defenses.  The expert was only able to recover a handful of file references to the shared folder from the unallocated space on Howell's hard drive. That small fragment of data does not prove or disprove Howell's contention that the sound recordings were not in his shared folder. The recording companies' remaining evidence regarding the origin and locations of the sound files is tenuous and circumstantial. Howell's actions have made it impossible to decide this case on the merits. The prejudice to the court and to the recording companies is irretrievable.

The Court specifically determined that an "adverse inference" was insufficient:

It will not suffice to impose a presumption that the evidence lost was damaging to Howell. <u>The evidence destroyed here was so central to the allegations in this case that imposing such a presumption would effectively establish his liability.</u> Imposition of a default judgment is therefore the only appropriate sanction, both for its deterrent effect and to remedy the prejudice inflicted on the recording companies and on the court.

*Id.* (emphasis added).

In the case at hand, Defendant actions, while similar to that in *Howell*, are actually far more extensive and egregious – yet still are "so central to the allegations in this case that imposing such a presumption would effectively establish [Defendant's] liability." *Id.*

To summarize, Defendant (1) perjured himself in his discovery responses under oath; (2) used file destruction software to delete evidence on four hard drives; (3) reinstalled the entire operating system of two hard drives; (4) admittedly failed to produce two additional hard drives; (5) falsely represented under oath that one of his computers was not operational until 2016 (when forum posts established that he built it in 2013 - and thus, he never turned over any hard drives that he used from 2013 to 2016 on that computer); (6) Plaintiff's expert concluded that three additional computer devices were never turned over; (7) Defendant claims that he disposed of eight hard drives, most of which occurred in late 2015, but he has no proof supporting his self-serving claims; and finally (8) Defendant produced employment records during the time of infringement which, upon verification, contained a different time record than the records produced by his employer.  Each of these violations goes to the heart of Plaintiff's claims.

## XI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests entry of a terminating sanction in the form of a default judgment against Defendant.  To issue any lesser sanction than default would only threaten the truth-seeking function of the litigation process because it would enable Defendant to continue to attempt to perpetuate his fraud.[15]  Plaintiff invites the Court to schedule an evidentiary

---

[15] Notwithstanding the foregoing, if for any reason the Court disagrees, Plaintiff respectfully request any appropriate lesser sanction.

1  hearing or appoint a neutral forensics computer expert to ensure the proper adjudication of this

2  Motion.

3  Dated: February 2, 2017.

                                          Respectfully submitted,

4

                                          By: /s/ Anthony Lupu
5                                         Anthony Lupu, Esq.
                                          PILLAR LAW GROUP, APLC
6                                         *Attorney for Plaintiff, Malibu Media, LLC*

7

8

9                           <u>**CERTIFICATE OF SERVICE**</u>

10

11          I hereby certify that on February 2, 2017, a true and correct copy of the foregoing document
   was served via U.S. Mail and/or email to the following:

12

13  Joseph Curtis Edmondson
   Law Offices of J. Curtis Edmondson
14  15490 NW Oak HIlls Dr
   Beaverton, OR 97006
15  Tel: 503-701-9719
   E-mail: jcedmondson@edmolaw.com
16  *Attorney for Defendant*

17                                        By: /s/ Anthony Lupu

18

19

20

21

22

23

24

25

26

27

28