J. Curtis Edmondson (CASB # 236105)
Law Offices of J. Curtis Edmondson
Venture Commerce Center
3699 NW John Olsen Place
Hillsboro, OR 97124
Phone: 503-336-3749
Fax: 503-482-7418
Email: jcedmondson@edmolaw.com

Robert Robinson (CASB # 131461)
Law Office of Robert S. Robinson
2400 Camino Ramon Ste 185
San Ramon, CA 94583
Phone: 925-830-2702
Fax: 925-830-2104
Email: rob@robrobinsonlaw.com

Attorneys for Defendant JOHN DOE IP address 76.126.99.126

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC | ) Case No.: 3:15-cv-04441-WHA |
| | ) |
| Plaintiff, | ) Date: March 9, 2017 |
| | ) Time: 8:00 am |
| vs. | ) Courtroom: 5, 17th Floor |
| | ) Judge: Hon. William H. Alsup |
| JOHN DOE subscriber assigned IP | ) |
| address 76.126.99.126, | ) |
| | ) **DEFENDANT JOHN DOE 76.126.99.126'S** |
| Defendant. | ) **NOTICE OF MOTION AND** |
| | ) **MOTION FOR SUMMARY JUDGMENT** |
| _____ | ) |
| | ) ORAL ARGUMENT REQUESTED |
| And Related Cross Actions | ) |

**PLEASE TAKE NOTICE** that That Defendant, JOHN DOE subscriber assigned IP address 76.126.99.126 ("Doe") hereby states that on March 9, 2017 at 8:00am, it will move for entry of summary judgment on all claims in Plaintiff Malibu Media LLC 's ("Malibu") Complaint

pursuant to Rule 56 of the Federal Rules of Civil Procedure, on Does's Affirmative Defenses of Non-Infringement and Copyright Misuse, and Doe's Cross Complaint of Non-Infringement.

Malibu failed to produce to Doe the depository copies of the 23 movies ("Works") at issue in this case. Since discovery closed on December 16, 2016, Malibu has no admissible evidence for which a comparison can be made to the alleged infringing works. With the any evidence of the depository copies of the films, the trier of fact cannot "compare" to the allegedly infringed work. Malibu's claims fail as a matter of law.

Further, Malibu does not have any direct evidence of infringement on Doe's media. Doe's expert examined nine media devices and found no evidence of Malibu works. There were no torrent files with hashes referencing Malibu works nor were there fragments of Malibu's works.

Further Malibu does not have indirect evidence of infringement as the data. Malibu's investigator based in Germany, IPP/Excipio, operates a homebrew system that cannot be considered a valid forensics tool, and as such, any data collected in inadmissible. Even if the system produces forensically valid data, IPP/Excipio has only collects 16KB out of a 100MB file. This sample size cannot constitute sufficient evidence for infringement.

Lastly, Malibu's claims are also barred under the affirmative defense of Copyright Misuse. Malibu has enforced its copyright portfolio in a very oppressive, "Sue and Settle" economic model.

Respectfully submitted,

Dated: <u>February 2, 2017</u>                    <u>/s/ J. Curtis Edmondson</u>

J. Curtis Edmondson Attorney for
Defendant John Doe
subscriber assigned
IP address 76.126.99.126

# TABLE OF CONTENTS

I.      INTRODUCTION                                                          1

II.     BACKGROUND                                                            2
        A.  Procedural Background                                             2
            1. Discovery of Documents Supporting Malibu's Claim              2

        B.  Factual Background                                                4
            1.  Malibu Publishes Movies at www.x-art.com                     4
            2. Gathering the Bittorrent Evidence – the NARS                   5
            System
            3. A Former Bittorrent Employee,  Analyzes The                    6
            Malibu/Ipp/Excipio's (Nars) System
            4. No DMCA Notices to IP Address 76.126.99.126                   8
            4. Does' Hard Drive Evidence                                      8

III.    ARGUMENT                                                             8
        A.  Standard of Review                                               8
            1.  Summary Judgment                                             8
            2.  Malibu's Claim on Infringement                               9
            3.  Doe's Affirmative Defense of Copyright Misuse                9
        B.  Malibu Cannot Prove Direct Infringement as the Works             9
            that it needs to make a comparison are not in evidence
        C.  Malibu Has No Evidence that Doe infringed the Works             11
            either Indirectly via NARS or Directly through the Hard
            Drive Analysis
            1.  Malibu's NARS Systemalibu's NARS SYSTEM                      11
            ONLY DOWNLOADS A "DE MINIMUS" FILE
            FRAGMENT WHICH CANNOT SUPPORT
            INFRINGEMENT
            2.  The Excipio/Ipp Nars System Is Not Software That            12
            Qualifies As Forensically Valid Tool As It Was
            Constructed In An Ad-Hoc Fashion And Was Never
            Tested By A Third Party
            3.  Malibu's Work's Are Not On Doe's Computer                   14
            Media.
        D.  DOE'S AFFIRMATIVE DEFENSE OF COPYRIGHT                          15
            MISUSE SHOULD BE GRANTED IN VIEW OF
            MALIBU'S USE OF THE FORENSICALLY
            INCOMPETENT NARS DATA COLLECTION
            SYSTEM NARS

IV.    CONCLUSION                                                    16

# Table of Authorities

**Cases**

*A&M Records, Inc. v. Napster, Inc.* (9th Cir. 2001) 239 F.3d 1004 ............................................. 9

*Altera Corp. v. Clear Logic, Inc.* (9th Cir. 2005) 424 F.3d 1079 .................................. 15

*Assessment Techs. of WI, LLC v. WIREdata, Inc.* (7th Cir.2003) 350 F.3d 640 ...................... 16

*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242 .............................................. 8

*Apple Inc. v. Psystar Corp.* (9th Cir.2011) 658 F.3d 1150 ....................................... 15

*Carroll v. Lynch* (7th Cir. 2012) 698 F.3d 561 ................................................. 14

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317 ............................................... 8, 12

*Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.* (1991) 499 US 340 .............................. 9

*Fox Film Corp. v. Doyal* (1932) 286 U.S. 123 ................................................... 15

*Ill. Tool Works, Inc. v. Indep. Ink, Inc.* (2006) 547 U.S. 28 .................................. 16

*In re Napster, Inc. Copyright Litigation* (N.D. Cal., 2005) 377 F.Supp.2d 796 ................... 9

*Ingenuity 13, LLC v. Doe* (C.D. Cal. Feb. 7, 2013) 12-cv-08333 ............................. 11, 17

*JCW Invs., Inc. v. Novelty, Inc.* (2002) 482 F.3d 910 ......................................... 12

*Kodadek v. MTV Networks, Inc.* (9th Cir. 1998) 152 F.3d 1209 .................................. 10

*Lasercomb America, Inc. v. Reynolds* (4th Cir. 1990) 911 F.2d 970 .............................. 16

*Malibu Media LLC. v. Doe* (E.D. Pa. 2015) 2:14-cv-01280 .................................. 9, 11, 12

*Malibu Media v Lipscomb, Eisenberg, & Baker* (C.D. Cal 2016) 16-cv-04175 ........................ 3

*Malibu Media, LLC v. John Doe* (E.D. Pa. Feb. 2, 2015) 2015 U.S. Dist. LEXIS 11691 ........ 14

*Malibu Media, LLC v. John Doe* (E.D. NY 2016) 2:15-cv-03504 .................................. 12

*Malibu Media, LLC v. John Does 1, et al.* (E.D. PA 2013) 2:12-cv-02078 ....................... 12

*Malibu Media, LLC. v. Bui* (W.D. Mich. 2014) 1:13-cv-00162 .................................... 9

*MDY Indus., LLC v. Blizzard Entm't, Inc.* (9th Cir.2010) 629 F.3d 928 ......................... 15

*Morton Salt Co. v. G.S. Suppiger Co.* (1942) 314 U.S. 488 .................................. 9, 16

*Practice Management Information Corp. v. American Medical Ass'n* (9th Cir. 1997)
    121 F.3d 516 ............................................................................................ 15

*Seiler v. Lucasfilm, Ltd.* (9th Cir. 1986) 808 F.2d 1316, 1322 ................................ 10

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory* (1st Cir.2012) 689 F.3d 29 .......... 15

*Stephenson v. Citco Grp. Ltd.,* (S.D.N.Y., 2010) 700 F.Supp.2d 599, 607 ........................ 13

*UMG Recordings, et. al vs. Roy* (D. N.H. 2008) 08-cv-00090 ................................ 12

*United Sates v. Marine Shale Processors* (5th Cir. 1996) 81 F3d 1361 .................... 14

*United States v. Paramount Pictures* (1948) 334 U.S. 131 ................................ 15

*Video Pipeline v. Buena Vista Home Entertainment* (3rd Cir., 2003) 342 F.3d 191 ............ 9

**Statutes and Regulations**

17 U.S.C. § 106 .................................................................................... 9

17 U.S.C. § 408(b)(1) and (2) .................................................................. 10

Fed.R.Civ.P. 56(e) ............................................................................ 8, 9

Fed.R.Evid. 1002 ............................................................................ 10

J. Curtis Edmondson (CASB # 236105)
Law Offices of J. Curtis Edmondson
Venture Commerce Center
3699 NW John Olsen Place
Hillsboro, OR 97124
Phone: 503-336-3749
Fax: 503-482-7418
Email: jcedmondson@edmolaw.com

Robert Robinson (CASB # 131461)
Law Office of Robert S. Robinson
2400 Camino Ramon Ste 185
San Ramon, CA 94583
Phone: 925-830-2702
Fax: 925-830-2104
Email: rob@robrobinsonlaw.com

Attorneys for Defendant JOHN DOE IP address 76.126.99.126

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MALIBU MEDIA, LLC | ) | Case No.: 3:15-cv-04441-WHA |
| | ) | |
| Plaintiff, | ) | **DEFENDANT JOHN DOE 76.126.99.126'S** |
| | ) | **MEMORANDUM OF POINTS AND** |
| vs. | ) | **AUTHORITIES IN SUPPORT OF THE** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| JOHN DOE subscriber assigned IP | ) | |
| address 76.126.99.126, | ) | ORAL ARGUMENT REQUESTED |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| And Related Cross Actions | ) | |

Defendant, JOHN DOE subscriber assigned IP address 76.126.99.126, ("Doe" or "Defendant"), moves for summary judgment against Plaintiff Malibu Media, LLC dba X-ART.COM ("Malibu" or "Plaintiff"), pursuant to FRCP 56.

# I.    **INTRODUCTION**

Since the very beginning, this case, and indeed, Malibu's request for early discovery, has been based on a lie. Not just a slight prevarication, but a misrepresentation on a grand scale: "Defendant downloaded, copied, and distributed a complete copy of Plaintiff's movies without authorization as enumerated on Exhibit A." (Plaintiff's original complaint, ¶ 21, p. 4, 9/27/15, Dkt. no. 1).

Malibu and its German Investigators have never known if this Defendant or any defendant downloaded a complete copy, because the German Investigators only request 16KB out of a typical 100MB file (0.00016). With this miniscule data in hand, Malibu received permission to serve subpoenas upon Internet Service Providers based on the dates the computers with the subject IP address allegedly downloaded the 23 films Malibu claims were infringed by Doe ("Works").

These assertions – key to Malibu's nefarious enterprise of falsification to the courts and intimidation of fearful defendants – were not made just once, to obtain the early discovery but were repeated throughout the case. For example, six months into the litigation, Malibu reasserted the exact same paragraph, with even the same paragraph number, in its Amended Complaint. (Dkt. No. 39, 3/24/16, ¶21, p. 4). But after undertaking a thorough (and expensive) investigation, including depositions of Malibu's purported experts and debunking these experts' "junk science," Defendant can demonstrate that each of these assertions are irrefutably false.

Malibu Media cannot make a *prima facie* case -- showing that defendant downloaded, copied, or distributed a complete copy of any of the allegedly infringed Works – and Malibu's own experts have proven this. Malibu bases its claims of infringement on the use of a hardware and software combination it refers to as the Excipio/IPP System ("NARS"). That system, Malibu claims, detects infringement and enables Malibu Media to make the assertion that its Work was downloaded, copied, and distributed, *in its entirety*, by a defendant.

However, even taking everything Malibu and its experts say about the Excipio/IPP system as true,[1] at best, it can show that a computer with the subject IP address, at the urging of

---

[1]  Defendant takes Malibu's assertions about the NARS system as true only for argument's sake in this motion. Doe will make a *Daubert* motion on this issue; Defendant urges Malibu's experts

one of Malibu's agents, uploaded a 16KB subpart of the Work to that agent. (16KB is .016 of a megabyte.) For a 100MB. movie, a 16KB subpart of a piece represents just 0.00016 of that movie – hardly a showing of a <u>complete</u> download of that movie as Malibu's story requires its audience to believe.

## II.   **BACKGROUND**

Malibu is a prolific litigant filing 4,455 lawsuits during the past six years. Dr. Fruits Expert Report; Ex. 1, pg. 21; hereinafter "Fruits Rep"; see also "Copyright Trolls and the Common Law", 100 *Iowa Law Rev.* 77, 81, RJN 5.  Over 80% of the lawsuits filed by Malibu are dismissed without prejudice. *Id.* at 20.  The remaining lawsuits result in settlements with an estimated range of $2,000.00 to $7,000.00.  *Id.*  It is estimated that Malibu has made between $1.7M to $6.8M from this litigation. *Id.*

### A.   PROCEDURAL BACKGROUND

From 2012 to 2015, Malibu used the Florida law firm of Lipscomb, Eisenberg & Baker, PLLC ("Lipscomb") as "general counsel" who then employed the local law firm of Heit/Erlbaum as local counsel for this case in California. *Malibu Media v Lipscomb, Eisenberg, & Baker* (C.D. Cal 2016) 16-cv-04175,  ¶ 10, RJN 1, hereinafter "*Lipscomb Lawsuit*".  Lipscomb employed Heit Erlbaum (attorneys Brian Heit and Brenna Erlbaum) as local counsel. See *Lipscomb Lawsuit*, RJN 2, Declaration of Collette Pelissier, ¶ 12.  Heit Erlbaum have since been replaced by "Pillar Law". See this Docket. On July 26, 2016, Malibu sued Lipscomb for professional negligence, breach of fiduciary duty, [….]. *Lipscomb Lawsuit,* RJN 1 *and* RJN 2.

This case was filed on September 27, 2015 alleging infringement of 23 of Malibu's works. (Dckt 1, Dckt 39).  This Court issued a scheduling order. (Dckt 35). Fact Discovery cutoff was December 16, 2016.  *Id.*

### 1.   DISCOVERY OF DOCUMENTS SUPPORTING MALIBU'S CLAIM

Doe requested a copy of all works and all communications with the Copyright Office. See Plaintiff's Response to Defendants Request for Production (Set One), Ex. 14. Malibu produced documents exported from the NARS system (infringement files), printouts from the Copyright Office (but not the registration certificates).  During discovery, all Doe received was

---

be excluded from relying upon NARS, which is junk science never peer reviewed or subject to meaningful scrutiny.

a disk entitled "NCA70" which contained all of the files produced by NARS. Yet, Plaintiff claims at least one copy of each Work was deposited with the Copyright Office. Declaration of Colette Pelissier Field, Ex. 23, pgs. 5-8.

Malibu refused to produce the depository copies of the works and the registration certificates, despite assertions they would be produced. Plaintiff's Supplemental Response to Defendants Interrogatories (Set One), Ex. 15, pg. 2:22-26. Doe moved to compel. This Court ordered that Malibu produce all communications with the Copyright Office by December 26, 2016. (Dckt 108). This Court also ordered the Deposition of Emilie Kennedy. Dckt 128. Ms. Kennedy stated in her deposition that Lipscomb may have provided Malibu with the depository copies of the works. See *Deposition of Emilie Kennedy*; Ex. 26, pg 57:9-19. Malibu did not provide any of the depository copies or production copies of the films to Defendant by December 26, 2016. Edmondson Decl. ¶ 3 at pg. 2:8-9.

Despite the fact that there was a discovery cutoff, on January 18, 2017, Malibu's counsel stated that 11 of the ".swf" files would be produced. Edmondson Decl. ¶ 4 at pg. 2:10-11. A *FedEx* package arrived at Defense Counsels' office on February 2, 2017. Edmondson Decl. ¶ 5 at pg. 2:12-14. Dispositive Motion cutoff was set for February 2, 2017. (Dckt 138).

### B. FACTUAL BACKGROUND

#### 1. MALIBU PUBLISHES MOVIES AT X-ART.COM

Malibu maintains a subscription based adult website of short films and photos at x-art.com. *Declaration of Colette Field*, Dckt 9-1, RJN 7. The website allows individuals with a "user id / password" to view and download all of the works in the ".MP4" format. *Deposition of Colette Field*, Ex. 22, pg. 217:6-25 to pg. 219:1-23.

Emilie Kennedy files all of the 700+ Malibu works, including the Works. *Deposition of Emilie Kennedy*, Ex. 26, pg. 43:7-9. The registration process consists of Kennedy accessing the x-art.com website, downloading the film in the format posted on the website. *Deposition of Emilie Kennedy*, Ex. 26, pg. 43. Ms. Kennedy (or sometimes an assistant) converts the file from the "*.mp4*" to a "*.swf*" format. *Id* at 60:7-17. Ms. Kennedy then fills out the electronic copyright application form at www.copyright.gov. *Id.* at 29:12-18.

Ms. Kennedy was not designated as either a fact or expert witness on Malibu's initial or supplemental disclosures. Ex. 19, Ex. 20.

## 2. GATHERING THE BITTORRENT EVIDENCE – THE *NARS* SYSTEM

The "system" involves two entities, both based in Germany. Plaintiff's investigator, IPP International UG ("IPP"), is given a list of works published by Malibu. IPP then uses a licensed software system, NARS, built by Excipio GbmH ("Excipio") and designed by Michael Patzer ("Patzer"). *Patzer Expert Declaration,* Ex. 8, pg. 2, ¶ 11. Excipio then conducts a lexical search on torrent websites. *Id at* ¶ 12. NARS downloads the "torrent" file on the torrent website and joins the swarm. *Id at* ¶ 12-13.

NARS uses a custom bittorrent client which emulates or "spoofs" a commercially available client from Azureus Software, Inc. *Michael Patzer Sur-Reply Expert Report*, Ex. 27, pg. 2, ¶ 5-6 . NARS then establishes a "bittorrent session" with members of the swarm.

NARS then captures data from TCPDump and stored in a MySQL database. *Patzer Expert Declaration,* Ex. 8, pg. 2, ¶ 11. At some point, Lipscomb, Malibu, and/or Excipio/IPP decide that a particular IP address is worth bringing an infringement action on.[2]

In this particular case, NARS/Excipio produced seven types of files:

     i.  PCAPS ("Packet Capture") in ".PCAP" format

    ii.  Technical Report[3] in ".PDF" format

   iii.  .tar file – A compressed file holding the movies

   iv.  .TORRENT file – The Raw torrent file.

    v.  "Additional Evidence" files (2) – Columns showing "Hit Date"

   vi.  ".xls" Spreadsheet entitled "76.126.99.126_NCA70" having transaction logs.
       Edmondson Decl. ¶ 6 at pg. 2:15-19.

The "infringements" are then computer verified by Tobias Fieser ("Fieser"). Neither Fieser nor Mr. Macek are designated as experts by Malibu. In fact, Fieser was not listed as a witness on the supplemental initial disclosures. Ex. 20.

---

[2] It is unclear what triggers litigation, but almost all recent lawsuits have a threshold of at least 10 works (e.g. $7,500.00 in min statutory damages) before suit is brought .

[3] The Technical Reports (Ex. 28) appears to have the law firm name on it, but it generated by the NARS system.

### 3. A FORMER BITTORRENT EMPLOYEE, ANALYZES THE MALIBU/IPP/EXCIPIO'S (NARS) SYSTEM

Doe retained the services of expert Bradley Witteman, a former Senior Director, Product Management at BitTorrent Inc., the software company founded by Bram Cohen, the inventor of BitTorrent. *See* Ex. 5; Witteman Expert Report, pp. 6-7. Mr. Witteman performed a detailed analysis of Excipio's system for BitTorrent monitoring and also reviewed the raw PCAP data provided by Excipio from NARS.

To build and effectuate new technologies based on BitTorrent, Witteman was required to learn the intimate workings of BitTorrent – and he did so by direct instruction from Cohen and Arvid Nordberg, who created a widely-used implementation of BitTorrent known as libtorrent. *Id.*

Witteman made findings about Malibu Media's efforts and technology used to (allegedly) protect its Works. First, and perhaps most critically, by review of Malibu Media's own documentation, Witteman disproved the central allegation of this case set forth in paragraph 21 of the original complaint and the amended complaint: that defendant downloaded, copied, and distributed complete copies of all of the 23 Works. *Expert Reply Report of Bradley Witteman*, Ex. 7, § 4 et seq., pg. 5-6. Witteman's review of the PCAPs provided by Malibu Media, and produced by their expert's system (the Excipio infringement detection system) showed that Malibu Media knows that the computer with the IP address of 76.126.99.126 (allegedly defendant's computer(s)) never downloaded a complete copy of any of the Works. *Expert Reply Report of Bradley Witteman*, Ex. 7, § 4.1.2, Table 1, pg. 5.) In fact, the untested, non-peer reviewed, faulty Excipio system generated PCAPs showing that the subject computer downloaded less than 10% of 10 of the 23 Works, less than 50% of 7 additional works, between 50% and 75% of 3 works, and between 75% and 96% of 3 Works. *Id.*

In other words, even were this court or a jury to find that the untested, non-peer reviewed, and unpublished Excipio system to be relied upon, it shows that none of the Works were ever downloaded in its entirety.

Despite this critical finding appearing in Mr. Witteman's reply report, Malibu's expert, Mr. Patzer, did not dispute it in any respect in his rebuttal report. In summary, then, it is

undisputed that Malibu's own documents show that Malibu and its many sets of counsel have falsely asserted, and repeated, that it can prove downloading of complete copies of its Works.

Under the BitTorrent protocol, a user cannot watch a video unless he has downloaded a complete copy of the file. *Expert Reply Report of Bradley Witteman*, Ex. 7, § 5, pg. 7. This is a known property of BitTorrent, and again, Mr. Witteman testified to it and his testimony was not challenged by Malibu Media.

Witteman provided many other important findings as well. First, he explained that Malibu Media fails to "use any of the three proven, trusted, well-known methods of protecting its content … ." *Expert Report of Bradley Witteman*, Ex. 5, § 5.3, pgs. 17-18. Second, BitTorrent permits the "spoofing" of IP addresses, meaning that the IP address reported on the Excipio system could have been forged. *Expert Report of Bradley Witteman*, Ex. 5, § 6.1, pg. 23. Many other reasons exist why fake IP addresses can appear through the use of BitTorrent, the existence of viruses, or the application of Virtual Private Network (VPN) software. *Id.* at §§ 6.2 – 6.5, pgs. 23-24.

Third, Witteman showed that, using tools such as "MediaInfo," the alleged "control copies" of the supposed depository copies of the Works contained encoding information with dates showing that the copies could not be from the original depository Works. *Id.* at §§ 7 et seq., pgs. 25-26. Even the titles of the copies conflicted with the titles of the registered Works. *Id.* at §§ 7.5, pg. 27.

Fourth, there are other problems with the Excipio infringement detection system. See *Id.* at §8, pgs. 34-39. Significantly, the Excipio system relies upon a very small sample size, a 16KB bit of a Work. This is a very small subset of an actual BitTorrent piece, the smallest of which is 128k. (See Id. at §§ 8.4, pg. 37.) Given that small size, it is not possible to verify or validate that the 16KB bit is part of the whole torrent file. *Id.* Further, the system seems to have "bugs." *Id.* at §§ 10, pgs. 45-48; *Expert Rebuttal Report of Bradley Witteman*, Ex. 6, § 6, pg. 14.

Fifth, the Internet is full of freely downloadable copies of Malibu's works. *Id.* at §§ 10 et seq. pg. 40. Witteman performed a Google search on the first 15 listed Works and found that, on just the first page of the search results, each Work had at least four sites where content of the Work was available for streaming. *Id.*, § 9.1, Table 8, pg. 40. Whether it is because Malibu fails to properly protect its films, or because Malibu actually seeds the Internet to promote its litigation, the content is readily, freely available.

#### 4. <u>No Malibu DMCA Notices to IP Address 76.126.99.126</u>

Malibu claims to send "thousands of DMCA Notices". Plaintiff's Responses to Defendant's Request for Production of Documents (Set Two), Ex. 17, pg. 9:12-15. When Doe requested copies of DMCA notices sent to this specific IP Address, no notices were produced. Edmondson Decl. ¶ 7 at pg. 2:20. The only notice Defendant received was this lawsuit. *Rebuttal Expert Report of Eric Fruits*, Ex. 2, pg. 4.

#### 5. <u>Doe's Hard Drive Evidence</u>

Malibu requested production of Doe's hard drives. Doe first made a copy of his hard drive at Office Depot. This drive was forensically reviewed and no infringing works were found. *Digital Forensics Examination Report by Michael Yasumoto*, Ex. 10, pg. 4:15. Doe then sent his computer to counsel who had the original drive reviewed and forensically imaged. *Id.*

Malibu complained. Doe then sent other hard drives, including hard drives used by other family members. *Id.* at pg. 4:Table 1. The Experts agree, none of the Works are present on any of Defendant's nine hard drives. Even Plaintiff admitted it was unable to locate Malibu's Works on any of the hard drives produced by Defendant. Plaintiff's Response to Defendants Second Set of Requests for Admissions, Ex. 16, pg. 2:7-8.

## III. <u>ARGUMENT</u>

### A. <u>STANDARD OF REVIEW</u>

#### 1. <u>Summary Judgment</u>

Summary judgment is proper where the pleadings and discovery demonstrate that there is "no genuine dispute as to any material fact[,] . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248. The judgement sought shall be rendered if the pleadings, discovery and affidavits demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323. On an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). *In re Napster, Inc. Copyright Litigation* (N.D. Cal., 2005) 377 F.Supp.2d 796. 800.

### 2. MALIBU'S CLAIM OF COPYRIGHT INFRINGEMENT

Proof of copyright infringement requires two general elements: one, ownership of a valid copyright; and two, copying of constituent elements of the work that are original. *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc*., (1991) 499 US 340, 361.

Malibu must also prove that Doe volitionally created a copy of its works, *Malibu Media, LLC. v. Bui*, (W.D. Mich. 2014) 1:13-cv-00162 ("As long as Defendant engaged in a volitional act that led to creation of the unauthorized copy, he is responsible for it despite a lack of detailed understanding."), and that the copy created is substantially similar to the original copyrighted work. *Malibu Media LLC. v. Doe*, 2:14-cv-01280 (E.D. Pa. 2015) ("Here we determine as a matter of law that there was no improper appropriation because no reasonable jury, properly instructed, could find that the data snippet bears a "substantial similarity" to Malibu Media's copyrighted work.").

### 3. DOE'S AFFIRMATIVE DEFENSE OF COPYRIGHT MISUSE

On the affirmative defense of Copyright Misuse, the Defendant bears the burden of proof. The affirmative defense of Copyright Misuse is based on equitable principles that this Court, "… may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest." *Video Pipeline v. Buena Vista Home Entertainment* (3rd Cir., 2003) 342 F.3d 191, 204 citing to *Morton Salt Co. v. G.S. Suppiger Co*, 314 U.S. 488, 492.

### B. MALIBU CANNOT PROVE DIRECT INFRINGEMENT AS THE WORKS THAT IT NEEDS TO MAKE A COMPARISON ARE NOT IN EVIDENCE

To establish a *prima facie* case of copyright infringement, a plaintiff "must show ownership of the allegedly infringed material" and "demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.,* (9th Cir. 2001) 239 F.3d 1004, 1013. In order to obtain a copyright registration, an applicant must deposit as a part of his application a "copy" or "copies" of the

work. 17 U.S.C. § 408(b)(1) and (2); *Kodadek v. MTV Networks, Inc.*, (9th Cir. 1998) 152 F.3d 1209, 1211. Registration requires "…bona fide copies of the original work only…". *Seiler v. Lucasfilm, Ltd.,* 808 F.2d 1316, 1322 (9th Cir. 1986).

Put simply, Malibu must do three things to prove infringement of its 23 movies: 1) Provide the registration certificate, 2) Produce a copy of the work that is the subject of the registration certificate, 3) Show that Doe copied (e.g. violated the exclusive right) for that work.

Malibu has failed to produce evidence regarding the second element – the depository copies that they need to make the comparison. Since Malibu has not provided these documents to Doe by the discovery cutoff, they are precluded from using substitute documents (such as the movies in the .tar files). Ex. 14.

During discovery, Doe had requested categories of documents which included the depository copies. Ex. 14. Malibu did not provide the depository copies. Edmondson Decl. ¶ 3 at pg. 2:8-9. On December 16, 2016, discovery closed in this case. Malibu failed to produce copies of the 23 works in ".swf" files. Edmondson Decl. ¶ 5 at pg. 2:12-14.

On January 6, 2017, Malibu's Copyright Attorney Emilie Kennedy's deposition was taken. See Ex. 26 at pg. 63. Ms. Kennedy testified that the production files were on her computer at Lipscomb law firm. *Id.* at 63. Since none of the 23 works were produced, it is impossible for Malibu to lay the foundation for its case, as these documents were not produced in discovery.

This Court's supplemental discovery order states:

> 15. Except for good cause, no item shall be received as case-in-chief evidence if the proponent has failed to produce it in response to a reasonable and proper discovery request covering the item, regardless of whether any discovery motion was made.

It was the responsibility of Malibu to provide Doe with a copy of the depository works. Not only did Malibu refuse to provide these works when requested, that issue was covered when the parties met and conferred over the production of the filewrappers.

Malibu may argue that Doe is required to access the ".swf" files directly from the Copyright Office. The problem with Malibu's argument is that published works were not in the ".swf" format. Therefore, they are not the original documents. FRE 1002. Kennedy admitted

so much in her deposition that the files were converted from the published ".mp4" format to the ".swf" format. See Ex. 26 at pg. 63.

Since Malibu will not have the 23 films available for their case in chief, there is nothing for Malibu to "compare against" for the purpose of proving infringement. Malibu's case fails as a matter of law, and judgment should be entered in favor of Doe.

## C. MALIBU HAS NO EVIDENCE THAT DOE INFRINGED THE WORKS EITHER INDIRECTLY VIA NARS OR DIRECTLY THROUGH THE HARD DRIVE ANALYSIS.

In the unlikely event that Malibu is able to introduce the 23 works into evidence (see Section B, *supra*.), Malibu still needs to show that Doe infringed. This evidence can be demonstrated by either finding the actual files on Doe's computer or indirectly by showing that the NARS system was accurate, stable, and reliable enough to determine that DOE downloaded the 23 works at issue.

### 1. MALIBU'S NARS SYSTEM ONLY DOWNLOADS A "DE MINIMUS" FILE FRAGMENT WHICH CANNOT SUPPORT INFRINGEMENT.

To infringe, an infringer must create a copy that is "substantially similar" to the original. RJN 8; *Malibu Media LLC. v. Doe* (E.D. Pa. 2015) 2:14-cv-01280; see also Melville B. Nimmer and David Nimmer, Nimmer on Copyright §13.03 [A], 38.1 (Matthew Bender, Rev. Ed.).

One second is not enough to download any movie file, and courts have recognized that fact. RJN 9; *Ingenuity 13, LLC v. Doe* (C.D. Cal. Feb. 7, 2013) 12-cv-08333, Dckt 48. As Hon. Otis Wright stated in his order:

> "This snapshot allegedly shows that the Defendants were downloading the copyrighted work—at least at that moment in time. But downloading a large file like a video takes time . . . To allege copyright infringement based on an IP snapshot is akin to alleging theft based on a single surveillance camera shot: a photo of a child reaching for candy from a display does not automatically mean he stole it" *Id.*

The tiny portion of a file that could be downloaded in one second is too small to be substantially similar to the original. Even if the hash value captured in the PCAP corresponds to a portion of a digital file that is "identical, strikingly similar or substantially similar to" [Plaintiff's] copyrighted work, there is nothing before the court that describes the audio/visual material that is represented by that hash value. Is it the entire movie or is it some portion so small

that it would not be identifiable as part of the movie?"); see also *Malibu Media LLC. v. Doe*, (E.D. Pa. 2015) 2:14-cv-01280.

The only evidence Plaintiff has presented to support its claim that a copy was created at all at the instant IP address are PCAP files. These files purport to show one second of connection between defendant IP address and Plaintiff's investigation service.

2. **The Excipio/IPP NARS System is not software that qualifies as forensically valid tool as it was constructed in an ad-hoc fashion and was never tested by a third party**

Evidence gathered by a computer system is subject to the same *Daubert* limitations as testimony provided by a live expert.  See RJN 3; *Software on the Witness Stand: What should it Take for Us to Trust It*, (2010) TRUST 10 Proceedings of the 3rd International Conference on Trust and Trustworthy Computing, pgs. 396-416.   This article describes the technology and the resulting forensic investigation surrounding the music filesharing case of *UMG Recordings, et. al vs. Roy* (D. N.H.  2008) 08-cv-00090, hereinafter "*Roy*".

In *Roy,* the defendant was accused of downloading songs based on an IP address with the "behind the scenes" investigation of the forensic system that led to the complaint of the infringement.   What defendant *Roy*'s investigator found when they looked at the computer data was:

> …Yet, at least in the case of the document that apparently purported to contain the traced route to the IP in the subpoena, the software obviously failed to operate correctly, as can be seen in Figure 7. The reason for this could have been either internal code faults or network configuration faults.  *Software* at 4.

Central to Malibu's copyright enforcement model is the use of the Excipio/IPP software known as "NARS".  In fact, NARS has been used to not only initiate all of Malibu's 5000+ lawsuits, but, Malibu and the Excipio representatives have testified that the NARS system has never been inaccurate.  See RJN 6, pgs. 42-45; Transcript *Malibu Media v. Doe* (E.D. NY 2015) 15-cv-03504 Docket 34-1 Testimony of Michael Patzer. This is true even in this case - Malibu claims its system is 100% accurate. *See* Transcript of The Deposition of Michael Patzer, Ex. 24, pg. 51:19-22. Plaintiff's Responses to Doe's Request for Admissions, Set One, Ex. 13; Plaintiff's Responses to Defendant's First Set of Interrogatories, Ex. 12, pg. 3:26 to pg. 4:1.

The problem with position is that is impossible to build a complex system using one designer to direct programmers to write "bug free" code. See Ex. 3, Expert Report of Dr. Kalman Toth. Dr. Toth has expertise in software systems and validation. *Id.* His conclusion from reviewing the evidence is that "Assertions that NARS works flawlessly or detects infringers with 100% [accuracy] are not credible". *Id.* This conclusion was based on the fact that NARS has never had formal specifications, walkthroughs, formal testing, inspections, third-party validations, or documentation of failure modes. *Id.* There has never been a third-party paper written about the NARS technology, nor has an expert report even been filed regarding NARS in a Malibu Media case in the United States.

Excipio/IPP's response to the expert critique of NARS by Dr. Toth was simply to have the developer, Michael Patzer, states that "it works". See *Ex. 8*; *Expert Declaration of Michael Patzer*. But, Mr. Patzer fails to declare in his declaration anything about the processes he took for code development, code testing, recording of errors, recording of false positives, etc. rather Patzer uses the argument that "Agile Development Works". See *Ex. 9*; *Expert Declaration of Michael Patzer*. However, as Dr. Toth points out, a software development methodology, such as Agile Development, still requires formal design principles. See *Ex. 4*; *Toth's Response to Patzer Supplemental Report*.

This Court does not have to accept fantastic claims that are not grounded in scientific principles. In 2010, it was discovered that a respected investor, Bernie Madoff, delivered consistent year after year results only via a Ponzi Scheme. See *Stephenson v. Citco Grp. Ltd.,* (S.D.N.Y., 2010) 700 F.Supp.2d 599, 607. In 2015, it was discovered that Volkswagen used software to cheat on emissions tests. See generally *In re Volkswagen "Clean Diesel" Marketing, Sales, Practices, and Products Liability Litigation* (N.D. Cal. 2015) 16-cv-295. This has been followed by scandal involving the local tech company Theranos' falsification of test results.[4] It is clear that software that is claimed to be "perfect" should raise greater questions then when it is shown to have a certain number of false positives with supporting test data.

Ultimately, the problem is that Mr. Patzer's livelihood is inextricably bound up in the operation of NARS. Plaintiff's Corrected Expert Witness List, Ex. 21 at ¶ 2 pg. 2:5-17. Patzer cannot be held to have no bias with regard to NARS which is demonstrated in that he fails to

[4] See http://money.cnn.com/2016/05/25/technology/theranos-lawsuit/

provide any test data backing up the NARS system. Since he has a financial stake in the success of the system, his objectivity is compromised, and his report cannot be relied upon. *United Sates v. Marine Shale Processors* (5th Cir. 1996) 81 F3d 1361, 1370.

### 3. **MALIBU'S WORK'S ARE NOT ON DOE'S COMPUTER MEDIA.**

Furthermore, none of Doe's devices have any .torrent files of any kind on them, let alone those relating to Plaintiff's Works. *Digital Forensics Examination Report by Michael Yasumoto*, Ex. 10, pg. 5:1. Plus, even if there was evidence of any torrent files on Doe's computer, unless they contain Plaintiff's Works, those files are irrelevant as they do not infringe Plaintiff's Works. All of Plaintiffs theories regarding potential spoliation are simply theories that are off-base. *Digital Forensics Rebuttal Report by Michael Yasumoto*, Ex. 11, pg. 5:1.

A recent *Malibu Media v. Doe* opinion, while not binding, is instructive on this issue. In 2015, a court granted a *pro se* motion for summary judgment because Malibu "failed to show that any of its copyrighted works were on the defendant's devices." *Malibu Media, LLC v. Doe* (E.D. Pa., Feb. 2, 2015) 2015 U.S. Dist. LEXIS 11691, 18. Despite purported spoliation and inconsistent testimony, that court found that, without actual copies of Malibu's Works on the defendant's devices, Malibu failed to make its case. *Id*.

The law requires proof of copying – namely, a copy. *JCW Invs., Inc. v. Novelty, Inc.* (7th Cir. 2007) 482 F.3d 910, 914. Malibu has zero evidence of copying, and can point to no copy that was made. Circumstantial evidence that an IP address may have been involved in copying is not a copy. Completely failing to have admissible, relevant evidence to prove an essential element of its case, Plaintiff must have summary judgment entered against it. *Celotex Corp*, 477 U.S. at 322.

Having found no evidence of purported infringement, it is anticipated that Plaintiff will argue that potentially devices were not produced. Such an argument is irrelevant, as 1) all hard drives possessed by Doe have been produced; and 2) the internet postings relied upon by Plaintiff to show there may have been other hard drives or devices occurred years before the alleged infringements. Simply put, the absence of any alleged device cannot be used to infer a genuine dispute about any material fact, and instead Plaintiff must produce evidence showing there is a genuine issue of material fact. *Carroll v. Lynch* (7th Cir. 2012).698 F.3d 561, 565.

**D.** **DOE'S AFFIRMATIVE DEFENSE OF COPYRIGHT MISUSE SHOULD BE GRANTED IN VIEW OF MALIBU'S USE OF THE FORENSICALLY INCOMPETENT NARS DATA COLLECTION SYSTEM NARS**

'The sole interest of the United States and the primary object in conferring the [copyright] monopoly lie[s] in the general benefits derived by the public from the labors of authors." *Fox Film Corp. v. Doyal* (1932) 286 U.S. 123, 127. "Implicit in this rationale is the assumption that in the absence of such public benefit, the grant of a copyright monopoly to individuals would be unjustified." 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.03[A] (2014) (footnote omitted). "The copyright law, like the patent statutes, makes reward to the owner a secondary consideration." *United States v. Paramount Pictures* (1948) 334 U.S. 131, 158. "Copyright misuse is a judicially crafted affirmative defense to copyright infringement" designed to prevent "holders of copyrights from leveraging their limited monopoly to allow them control of areas outside the monopoly." *Apple Inc. v. Psystar Corp.* (9th Cir.2011) 658 F.3d 1150, 1157.

Copyright misuse has been expressly adopted as an equitable defense by the Ninth Circuit. *Practice Management Information Corp. v. American Medical Ass'n* (9th Cir. 1997) 121 F.3d 516. That court recognizes copyright misuse as "an unclean hands defense which forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office and which is contrary to public policy to grant." *Altera Corp. v. Clear Logic, Inc.* (9th Cir. 2005) 424 F.3d 1079, 1090. Copyright misuse has only been discussed in a handful of cases in the Ninth Circuit, and "[its] contours [are] still being defined." *MDY Indus., LLC v. Blizzard Entm't, Inc.* (9th Cir.2010) 629 F.3d 928, 941; see also *Apple Inc. v. Psystar Corp.* (9th Cir.2010) 658 F.3d 1150, 1157.

However, other circuits have defined its bounds more clearly, and the defense is applied when a defendant can prove either: (1) a violation of the antitrust laws; (2) that the copyright owner otherwise illegally extended its monopoly; or (3) that the copyright owner violated the public policies underlying the copyright laws. *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory* (1st Cir.2012) 689 F.3d 29, 65, *cert. denied,* —— U.S. —— (2013) 133 S.Ct. 1315. The Seventh Circuit couches copyright misuse as an abuse of process: "for a copyright owner to use an infringement suit to obtain property protection, here in data, that copyright law clearly does

not confer, hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, is an abuse of process." *Assessment Techs. of WI, LLC v. WIREdata, Inc.* (7th Cir.2003) 350 F.3d 640, 647.

Copyright misuse is an equitable defense to an infringement. "Equity may rightly withhold its assistance from such a use of the [copyright] by declining to entertain a suit for infringement ... until ... the improper practice has been abandoned. . ." *Morton Salt Co. v. Suppiger Co.* (1942) 314 U.S. 488, 493, *abrogated on other grounds by Ill. Tool Works, Inc. v. Indep. Ink, Inc.* (2006) 547 U.S. 28. If Malibu is using its copyright in a manner contrary to public policy, this Court in its capacity as a court of equity may refuse to aid such misuse. *See Lasercomb*, 911 F.2d at 975–76.

Malibu's copyright portfolio, and in this case the 23 Works, is being asserted in a manner that is seeks to maximize revenue via the "sue and settle model". Ex. 1; *Expert Report of Eric Fruits*. While maximizing revenue of an IP asset is not in itself unlawful, Malibu uses the Federal Court System to generate a large portion of its revenues. *Id*. At the same time, Malibu makes no effort to protect their content through readily available means by installing an inexpensive digital rights management system on their server. See Ex. 5, pg 18; *Expert Report of Bradley Witteman*. Further, NARS is designed to only sample 16KB from a media file that is approximately 100MB in size.

Even the "validation of the infringements" as performed by Tobias Fieser, who stated in his deposition that he verifies infringements, "three hours per week". Ex. 25, pg. 116; *Deposition of Tobias Fieser*. But since Malibu filed 1,000+ cases in 2015, with approximately 20 minutes each, Mr. Fieser would have had to work 277 days, 24 hours a day, to verify 1000 cases. (Malibu filed much more).

IV.     **CONCLUSION**

The only conclusion one can draw is that Malibu does not operate like a normal studio - make films and charge for them.   Instead Malibu makes a large chunk of its money using unreliable bittorrent monitoring software which only collects a *deminimus* amount of data (16KB per 100MB film).

To add insult to injury, Malibu cannot even produce the 23 films that they filed with the Copyright Office before the close of discovery. As such, Malibu cannot lay the foundation needed to prove their case.

Malibu is no different than "Prenda Law" in form and function. See RJN 9; *Ingenuity 13, LLC vs. Doe,* (CD CAL 2012) 12-cv-07773, Dckt 48. They cleverly exploit the fact that most people will settle for 5-10K when sued despite the fact that the system used to "capture" their IP address is neither robust nor valid.

Malibu's economic model of copyright enforcement contravenes Article I, Section 8 of our Constitution which states that copyrights are:" *To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries*", our founders never contemplated that the Federal Court System would be used extract *deminimus* settlements based on mere allegations backed up by ephemeral evidence.

Doe respectfully requests that this Court grant this motion for summary judgment.

Respectfully submitted,


Dated: February 2, 2017                    /s/ J. Curtis Edmondson
                                           J. Curtis Edmondson (CASB # 236105)
                                           Attorney for Defendant JOHN DOE 76.126.99.126