J. Curtis Edmondson (CASB # 236105)
Law Offices of J. Curtis Edmondson
Venture Commerce Center
3699 NW John Olsen Place
Hillsboro, OR 97124
Phone: 503-336-3749
Fax: 503-482-7418
Email: jcedmondson@edmolaw.com

Robert Robinson (CASB # 131461)
Law Office of Robert S. Robinson
2400 Camino Ramon Ste 185
San Ramon, CA 94583
Phone: 925-830-2702
Fax: 925-830-2104
Email: rob@robrobinsonlaw.com

Attorneys for Defendant JOHN DOE IP address 76.126.99.126

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MALIBU MEDIA, LLC, | Case No.: 3:15-cv-04441-WHA |
| Plaintiff, | Date: March 9, 2017 |
| vs. | Time: 8:00 am |
| | Courtroom: 8, 19th Floor |
| JOHN DOE subscriber assigned IP address 76.126.99.126, | Judge: Hon. William H. Alsup |
| Defendant. | **DEFENDANT JOHN DOE 76.126.99.126'S OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING SANCTIONS** |
| And Related Cross Actions | ORAL ARGUMENT REQUESTED |

I.  **SUMMARY**

Terminating sanctions are the harshest of all remedies and should be used sparingly, but not when the basis for the motion is wrong. Plaintiff Malibu Media, LLC ("Malibu" or "Plaintiff") complains that evidence is missing, when, in fact it is not. This only demonstrates that Malibu willing to mislead this Court.

OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING SANCTIONS: Page 1

Defendant Did Not Destroy Evidence

Defendant John Doe ("Defendant" or "Doe") made a hard drive backup (BATES 10002) on December 21, 2015. [Edmondson Decl]. This was two weeks after locating counsel. This hard drive had the "Windows.Old" subdirectory on the drive. [Yasumoto Decl]. That "Windows.Old" had 24.8 GB of data on it. The data relevant to this case was there. The problem for Malibu is that there were no Malibu Works on this hard drive. That bothers Malibu.

So, when Malibu States:

" Paige concluded that the installation of Windows 10 on December 10, 2015 and deletion of "windows.old" folder made it impossible to determine what was on the Solid State drive during the infringement period:" [ Motion at 4]

This is false - Doe did not hide the anything. - rather Patrick Paige did not look for it. Doe turned over the only computer that was relevant to this case.

Doe builds a Replacement System in 2016

Further Malibu complains about other hard drives. Doe built a brand-new system to replace his computer. This was done since Doe shipped his computer used during 2015 to his lawyer for evidence preservation. Doe did more than most Fortune 500 companies to preserve evidence for this case.

Doe Corrected his Interrogatories at his Deposition

Malibu's argument regarding perjury is also inaccurate. Doe's interrogatory answers were not complete. However, Doe's deposition was taken, and Doe corrected those interrogatories at his deposition. *Coleman v. Keebler* (N.D. IN  1998) 997 F. Supp 1102, 1107. There was no prejudice to Malibu with regard to his interrogatory answers.

Doe "Cleaned Up" because he got married in June 2015

Defendant got married in June 2015, but his wife could not join him until November. [John Doe Decl. 4] . So he did what every bachelor should do - cleaned up his house and disposed (E-Wasted) of his unused computer gear. [John Doe Decl. 5]

<u>Malibu's Motion relies on the testimony of the unreliable "expert" Patrick Paige</u>

Malibu relies heavily on the expert opinion of Patrick Paige, who has yet to be qualified under *Daubert*. Paige's ability to be qualified is questionable at this point. Paige claims to have "tested" the IPP/Excipio system, when in fact it was his business partner, David Kleiman who tested it. [Witteman Decl.]. Paige also omitted the fact he left the Palm Beach Police Department under a cloud involving drugs. [Edmondson Decl.]. This Court should be skeptical of his expert testimony.

II. <u>ARGUMENT</u>

    A. <u>MALIBU FAILS TO MAKE A DECLARATION REGARDING A GOOD FAITH "MEET AND CONFER" PRIOR TO BRINGING THIS MOTION AND NEVER MOVED TO COMPEL ANY ADDITIONAL EVIDENCE</u>

Malibu cites to FRCP 26 and FRCP 37 as a basis for this motion. See Motion, Page 24 stating "DEFENDANT SHOULD BE SANCTIONED UNDER RULE 26(E) AND RULE 37".

The local rules state for 37-1 state:

> The Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues.

If Malibu had engaged in a meet and confer, John Doe's counsel could have told Malibu's expert, Patrick Paige, where the "Windows.old" subdirectory was located.

    B. <u>DOE TOOK REASONABLE STEPS UNDER FRCP 37(E) AS HE PRESERVED HIS HARD DRIVE TWO WEEKS AFTER NOTICE THE SUIT AND DOE PROVIDED THE WINDOWS.OLD FILE TO PAIGE.</u>

Malibu makes this case extremely confusing by first speculating to "drives"/ "computers" that Doe posted on the internet in 2012 (then disposed of). Then referring to the actual computer used during the period infringement (Solid State Drive). Then speculating that a computer put into operation <u>after</u> the period of infringement, with three internal drives, was operational during the period of infringement.

1. <u>Doe used one computer/drive during the period of infringement – "Solid State Drive"; he made a backup, then sent the entire computer to counsel; he then built a replacement computer in 2016.</u>

The parties agree that one computer was used during the period of infringement from February 18, 2015 to August 18-20, 2015 by Doe with one hard drive installed. That hard drive was produced as BATES 10002 and 10001. The hard drive has been identified as the "Solid State Drive". This "Solid State Drive" was first copied by Doe on <u>December 21, 2015</u> at Office Depot. [ BATES 10002]. When Malibu's counsel, Brenna Erlbaum, objected that she did not want BATES 10002 after receiving an expert report, Doe sent his entire computer with the Solid State Drive to counsel for imaging. [ BATES 10001].

The second set of drives include the three drives Doe used in his new computer to replace the computer he sent to counsel. Since this computer was built after the dates of infringement, it would not have any of the infringing works.

Malibu may speculate that these drives could have had the infringing works, but these drives do not, as Doe's expert Michael Yasumoto has indicated in his expert reports.

2. <u>Doe cannot be sanction for spoliation when he complies with Rule 37(e)</u>

Amended Rule 37(e) reflects the fact that that a party may only be sanctioned for spoliated data that:

> …is lost because a party failed to take <u>reasonable steps</u> to preserve it, and it cannot be restored or replaced through additional discovery, FRCP 26(e).

The commentary to Amended Rule 37(e) provides some insight into the problem with electronic discovery and the issue of spoliation. The commentary to Rule 37(e) states in part:

> New Rule 37(e) replaces the 2006 rule. It authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures. It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be use
>
> The rule applies only if the information was lost because the party failed to take reasonable steps to preserve the information. <u>Due to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant electronically stored information is often impossible.</u>

The Courts in this district have begun interpreting what is "reasonable" in view of amended FRCP 37 (e).

In *Matthew Enter., Inc. v. Chrysler Grp.* LLC (N.D. Cal., 2016) 13-cv-04236, Dckt 172; a dispute arose involving the Robinson-Patman Act. In discovery, Defendant, Chrysler then demanded copies of relevant emails, which Plaintiff had admittedly discarded. The Court in *Matthew* took a "middle of the road" approach, entering an adverse inference instruction. [See RJN 1.]

In *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC* (N.D. Cal., 2016) 15-cv-1893-HRL this Court issued an incremental sanction for failing to turn over native file formats after being ordered by this Court. This sanction was only imposed after a prior order of this court. [See RJN 2.]

In *Fed. Trade Comm'n v. Directv, Inc*. (N.D. Cal., 2016) 15-cv-01129-HSG, the FTC moved to impose spoliation sanctions based on DirecTV's failure to preserve an interactive website in 2015. See RJN 3. The only sanction the court in *Fed. Trade Comm'n* was to imposed was another four hour deposition of Plaintiff. [RJN 3.]

In *ILWU-PMA Welfare Plan Bd. of Trs. v. Conn. Gen. Life Ins. Co.* (N.D. Cal., 2017) 15-cv-002965 WHA this Court imposed sanctions for failure to preserve electronic data in view of a tolling agreement. But the sanctions imposed were not terminating sanctions, rather, discovery was reopened to address the issue regarding lost data. [RJN 4.]

These cases demonstrate that under amended FRCP 37(e) that terminating sanctions are rarely, if at all, imposed. This is even when the parties are sophisticated corporate litigants who were on notice of the duty to preserve data.

The truth is that Doe took reasonable steps to preserve evidence for litigation by making a backup copy of his system made in <u>December, 2015</u> and sending that drive to his counsel. This was done, three months before discovery opened and two weeks after he retained an attorney. Further, that backup drive has always been available but <u>Malibu did not want it</u>. Doe did turn it over in November, along with other drives that were irrelevant as they were put into use after the dates of infringement.

That drive was turned over for inspection by Malibu's hard drive 'expert' Patrick Paige. It contains significant amounts of data, (>25GB of data), including the "Windows.old" file. It

contains evidence of files being accessed during the periods of infringement. Malibu has the drive at issue.

This hard drive is not mentioned anywhere on Paige's expert report. Also Malibu's counsel <u>refused</u> to take this hard drive.

Malibu also knew about this hard drive as early as March 28, 2016. Doe's counsel served Malibu's copy of an expert report. Brenna Erlbaum, Malibu's counsel refused to take this drive for inspection by stating:

> [Email 3/30/2016 from J. Curtis Edmondson to Brenna Erlbaum]
>
> *Hi Brenna,*
>
> *Attached is our forensics report on the hard drive for [REDACTED] If you want to send over your expert to my office, I have the hard drive for inspection. I could probably get a declaration from [REDACTED] attesting he does not have any knowledge of the MM films (aside from what has been alleged in your case).*
>
> *Please let me know if you want to press forward on this case in view of this report. Given the evidence I have, I will have to decline the "$ 7,000.00 or above"settlement threshold at this stage.*
>
> Curt Edmondson
> 503-701-9719.

Malibu's counsel rejected this expert report and the hard drive by stating:

> [3/31/2016 Email from Brenna Erlbaum to J. Curtis Edmondson]
>
> *Curt,*
>
> *I was reaching out because at this stage, we are interested in imaging your hard drive. A "back up" is not the same as a forensic image, as I am sure you know.*
>
> *I have been in contact with DriveSavers, a computer forensic team in California. Would your client be willing to mail the hard drive to DriveSavers?*

Ms. Erlbaum never made arrangements with "DriveSavers" to image the hard drives. Rather, Doe paid for the imaging at his expense.

Much of the "lost evidence" is not relevant to this action. Doe was married in July, 2015 in China. His wife could not emigrate to the United States until November, 2015. Doe did what newlyweds do – he got rid of all of his computer "junk" before she showed up and long before

the Comcast notice.  Doe's Dad, a longtime employee at a research laboratory with a top secret clearance, can and will attest to that.

One of the key issues is that Malibu's spoliation motion is based on the reports of Patrick Paige, Malibu's designated hard drive forensics expert.  Malibu assumes that this spoliation evidence that Paige will be qualified as an expert under *Daubert* and his report/testimony are credible.  Paige was not exactly straight in his expert disclosures – he failed to mention that he was removed from his position as a Palm Beach County Detective for using police property to support illegal drug distribution, and more importantly, [Ex. 1], he has lied regarding his testing of the IPP/Excipio system. [Ex. 2].

### C. Malibu's Claims of Perjury

1. <u>Malibu argues a different "time periods" was stated in the Interrogatories regarding the computers (Motion at 8)</u>

Malibu argues that Doe perjured himself by changing his "story" at the deposition.  The interrogatories regarding the computers stretched back for a period of three years from the date they were propounded, arguably June, 2013 to June 2016.

The argument made is different. Doe identified the computer he used for internet browsing during the "periods of infringement", which was February, 2015 and August, 2015.  These are different time frames than the deposition, and would, of course, result in different answers. Doe clarified the computers he used and disposed of during the three year prior period and also during the four day period of infringement.

2. <u>Hard Drive "Perjury" (Motion at 9)</u>

Malibu argues that John Doe perjured himself regarding the number of hard drives.  The same issue is involved. *Supra.*  John Doe clarified this at his deposition and produced all of the hard drives. Malibu can claim, "missing" hard drives, but this is speculative and goes to the credibility of both Doe and expert Patrick Paige.  The trier of fact can weigh who is more credible in this regard.

3. <u>Bittorrent Use "Perjury" (Motion at 11)</u>

Malibu argues that John Doe perjured himself regarding the use of bittorrent. Malibu confuses content searching for the word "Bittorrent" with the act of "torrenting" itself. Nonetheless, the "posts" cited in their motion are from dates in the time period of 2012 or earlier. This is not only beyond the copyright statute of limitations, the torrrenting did not involve Malibu works. Doe, clarified this at his deposition.

4. <u>"Perjury" regarding "watching porn"  (Motion at 13)</u>

Malibu argues Doe perjured himself regarding his failure to answer his interrogatory regarding "porn". Malibu's interrogatory violates the FRCP regarding subparts such that the question may be interpreted in many ways.  Defendant objected to it, but answer the best he could given the compound nature of the question. This is not perjury, it is a poorly formed interrogatory.

5. <u>"Perjury" regarding "remote access" (Motion at 14)</u>

Malibu argues Doe perjured himself regarding "remote access" from work.  This was not an interrogatory question, rather a line of questioning during a deposition where he had to remember activities that occurred four years previously. He was shown a document to refresh his recollection and he corrected his statement. That is not perjury, this is "I forgot".  More importantly how is it material to this case when in 2012 a person can remote into a computer, but the infringement occurred in 2015.  The assumption would be that the same computer was being used in 2012 as was in 2015 with the exact same software, etc.  This is not the case.

6. <u>"Perjury" regarding "*Corsair 350D*" (Motion at 15)</u>

Malibu argues Doe perjured himself regarding the "Corsair 350D". The Corsair 350D is not a computer.  It is a *computer case* that can accept different motherboards, hard drives, etc. [Edmondson Decl, Ex. 4].  Since it is a "case" but not a "computer", the components in the computer could have been different in 2013 than the components in 2016.  They were different "computers" just perhaps in the same case.  This is not perjury.

### D. Malibu's Works Are Not on Doe's Computer Media and the Evidence Found contradicts the Spoliation Argument

Plaintiff argues "spoliation" but there was significant amount of data on the relevant drives produced. [BATES 10002 and BATES 10001]. It seems that a person who would "wipe data", would wipe all data from all of his drives and computers devices. Instead, John Doe produce devices with a significant amount of data. This cuts against Malibu's argument because a "spoliator" would erase all data and any traces of that data, not selectively excising only Malibu works. This would take great skill.

### III. CONCLUSION

Termination sanctions are the harshest of sanctions.  In the case of spoliation of electronic evidence, they are rarely justified in view of the lesser sanction requirements under Rule 37(e). When it comes to discovery, it is not uncommon for a person to clarify interrogatory answers at a deposition.  Also, a person is allowed to forget what happened four years prior and is allowed to throw away "junk" prior to knowing about a lawsuit.

John Doe did what was reasonable under Rule 37(e) – he make a backup copy of a hard drive. When Malibu complained that this was inadequate (which it was not), he sent his current computer to his lawyer for imaging.  John Doe then built a replacement computer from spare parts and had to install a new operating system.  Malibu never mentions that they had all of the "missing data" on BATES 10002 which was made right after notice of the suit.

For the above stated reasons, John Doe respectfully requests denial of Plaintiff's motion for terminating sanctions.

Respectfully submitted,

Dated: February 16, 2017              /s/ J. Curtis Edmondson
                                      J. Curtis Edmondson
                                      Attorney for Defendant JOHN DOE 76.126.99.126